**LEE LITIGATION GROUP, PLLC**
CK Lee (CL 4086)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs, FLSA Collective Plaintiffs
and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

RAFAEL DE LA CRUZ, *on behalf of himself,*
*FLSA Collective Plaintiffs and the Class,*

                     Plaintiff,

          v.

BROADWAY FOOD MART INC.,
      d/b/a DOLLAR JUNCTION,
SUTTER DOLLAR DISCOUNT INC.
      d/b/a SUTTER DOLLAR DISCOUNT,
JOHN DOE CORPORATIONS 1-100,
and BASIT H. MOTIWALA,

                    Defendants.

---

Case No.:

**CLASS AND COLLECTIVE**
**ACTION COMPLAINT**

Jury Trial Demanded

        Plaintiff RAFAEL DE LA CRUZ (herein, "Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants BROADWAY FOOD MART INC. d/b/a DOLLAR JUNCTION, SUTTER DOLLAR DISCOUNT INC. d/b/a SUTTER DOLLAR DISCOUNT, JOHN DOE CORPORATIONS 1-100, (the "Corporate Defendants"), BASIT H. MOTIWALA ("Individual Defendants") (each individually, "Defendant" or, collectively, "Defendants") and states as follows:

## INTRODUCTION

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, (2) unpaid wages, including overtime, due to a fixed salary, (3) unpaid wages, including overtime, due to off-the-clock work, (4) liquidated damages, and (5) attorneys' fees and costs.

2.      Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), they and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, (2) unpaid wages, including overtime, due to fixed salary (3) unpaid wages, including overtime, due to off-the-clock work, (4) unpaid spread of hours premiums, (5) statutory penalties, (6) liquidated damages, and (7) attorneys' fees and costs.

3.      Plaintiff additionally alleges that Defendants unlawfully retaliated against him, in violation of the FLSA and NYLL and seeks to recover from Defendants: (1) economic damages, (2) punitive damages, and (3) attorneys' fees and costs.

4.      Plaintiff DE LA CRUZ further alleges that, pursuant to the New York State Human Rights Law, New York Executive Law §296 ("NYSHRL"), and the New York City Human Rights Law, Administrative Code of the City of New York § 8-107 ("NYCHRL"), that Plaintiff DE LA CRUZ was deprived of his statutory rights as a result of Defendants' fostering a hostile work environment through persistent racial discrimination against Plaintiff, and seeks to recover (1) economic damages, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

## JURISDICTION AND VENUE

2

5.    This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6.    Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

## PARTIES

7.    Plaintiff RAFAEL DE LA CRUZ is a resident of Kings County, New York.

8.    Defendant BASIT H. MOTIWALA owns and operate a series of discount stores and food marts throughout New York City under the tradenames of Dollar Discount, Food Mart, and/or Max Deals. The stores owned and operated by Defendant BASIT H. MOTIWALA include at least the following six addresses:

    a.  BROADWAY FOOD MART - 1550 Broadway, Brooklyn, New York 11221;

    b.  SUTTER DOLLAR DISCOUNT – 448 Sutter Avenue, Brooklyn, New York 11212;

    c.  BLAKE FOOD MART - 1159 Blake Ave, Brooklyn, NY 11208;

    d.  MAX DEALS – 2753 Coney Island Ave., Brooklyn, NY 11235;

    e.  MAX DEALS – 13340 79th Street, Howard Beach, Queens 11414;

    f.  MAX DEALS – 28 Debevoise Street, Brooklyn, NY 11206;

    g.  MAX DEALS – 180 Union Avenue, Brooklyn, NY 11206;

    h.  MAX DEALS - 4290 Broadway, New York, NY 10033;

    i.  MAX DEALS - 1791 Broadway, Brooklyn, NY 11207;

    j.  MAX DEALS - 1634 Church Ave, Brooklyn, NY 11226;

    k.  MAX DEALS - 967 Prospect Ave, The Bronx, NY 10459;

    l.  DOLLAR JUNCTION – 885 DeKalb Ave, Brooklyn, NY 11221;

m.  DOLLAR JUNCTION - 2087 Jerome Ave, Bronx, NY 10453;

(Collectively, with all other Dollar Discount, Food Mart, and/or Max Deals locations owned and operated by Defendant BASIT H. MOTIWALA but not listed here, the "Stores").

9.    Corporate Defendant BROADWAY FOOD MART INC. d/b/a DOLLAR JUNCTION is a domestic corporation with a principal place of business located at 1550 Broadway, Brooklyn, New York 11221, and an address for service of process located at c/o Basit Motiwala, 5305 Orchard Street, Piscataway, New Jersey 08854. Corporate Defendant BROADWAY FOOD MART INC. d/b/a DOLLAR JUNCTION operates DOLLAR JUNCTION, located at 1550 Broadway, Brooklyn, New York 11221.

10.    Corporate Defendant SUTTER DOLLAR DISCOUNT INC. d/b/a SUTTER DOLLAR DISCOUNT is a domestic corporation with a principal place of business located at 448 Sutter Avenue, Brooklyn, New York 11212, and an address for service of process located at the same address. Corporate Defendant SUTTER DOLLAR DISCOUNT INC. d/b/a SUTTER DOLLAR DISCOUNT operates SUTTER DOLLAR DISCOUNT located at 448 Sutter Avenue, Brooklyn, New York 11212.

11.    Defendant JOHN DOE CORPORATIONS 1-100 are each individual Dollar Discount, Food Mart, Max Deals and/or similarly titled discount store or food mart located in New York and owned/operated by Individual Defendant BASIT H. MOTIWALA. Each of the Store locations are nominally owned and operated by an individual one of the Defendant JOHN DOE CORPORATIONS 1-100. All Defendant JOHN DOE CORPORATIONS 1-100, all have common payroll, wage policies implemented, and are jointly operated by Individual Defendant BASIT H. MOTIWALA.

4

12.    Individual Defendant BASIT H. MOTIWALA is an owner and principal of each of the Corporate Defendants. BASIT H. MOTIWALA exercised control over the terms and conditions of Plaintiff's employment and those of FLSA Collective Plaintiffs and the Class. BASIT H. MOTIWALA exercised functional control over the business and financial operations of the Corporate Defendants. BASIT H. MOTIWALA had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs and Class members and could reprimand employees.

13.    Individual Defendant BASIT H. MOTIWALA, operates or operated the stores as a single integrated enterprise, under the control of their owner, Individual Defendant BASIT H. MOTIWALA. Specifically, the Stores are engaged in related activities, share common ownership, and have a common business purpose:

a.    The Stores all offer discount prices on a wide assortment of items, including cleaning supplies, seasonal items and toys, kitchen essentials, laundry supplies, and food and beverages, including the basics like milk, eggs, and bread.

b.    The Stores all share employees. Plaintiff worked at three (3) of the above listed six (6) stores. Other employees were similarly transferred between the stores on an as needed basis. Specifically, while Plaintiff predominantly worked at the 1550 Broadway, Brooklyn, New York 11221 locations, Plaintiff was transferred to cover for employees working at the 448 Sutter Avenue, Brooklyn and New York 11212, 1159 Blake Ave, Brooklyn, NY 11208, and other locations, on an as needed basis.

c.    The Stores all share supplies. Plaintiff observed supplies being exchanged between the Stores on an as needed basis.

d.  Employees across locations are all managed directly by the owner Individual Defendant BASIT H. MOTIWALA. Defendant BASIT H. MOTIWALA directly managed Plaintiff, and employees across locations, Plaintiff was able to and in fact did make complaints directly to Defendant BASIT H. MOTIWALA.

e.  The Stores all used a centralized and shared department for their document retention and Human Resources, Plaintiff and employees did not need to fill-out additional on-boarding documents (I9s, Wage Notices, etc.) when transferred between Defendants, and

f.  The Stores all shared executive management, the same phone number and assistance lines.

g.  All locations purchase and negotiate prices of merchandize and inventory in bulk and then supply the Stores on an as needed basis.

14.  At all relevant times, Corporate Defendants, each were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA and NYLL and the Regulations thereunder.

15.  At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and Class members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

16.  Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees (including clerks, cashiers, stockers, sales associates) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

17.    At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay proper wages, including their overtime premium at one and a half times the regular rate for all hours worked over forty (40) in a workweek. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

18.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

19.    Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees (including clerks, cashiers, stockers, sales associates)  employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

20.    All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

21.   The proposed Class is numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

22.   Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants of (i) failing to pay wages, (ii) failing to pay wages for all hours worked due to a fixed salary, (iii) failing to pay wages for off-the-clock work, (iv) unpaid spread of hours premium (v) failing to provide proper wage statements to employees, and (vii) failing to provide proper wage notices to employees.

23.   Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures.

24.   Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented Plaintiffs in wage and hour cases.

25.   A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against

corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

26.    Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

27.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

    a.    Whether Defendants employed Plaintiff and the Class within the meaning of the New York law;

    b.    What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiff and the Class members;

    c.    At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and the Class members for their work;

    d.    Whether Defendants properly notified Plaintiff and the Class members of their hourly rates and overtime rates;

    e.    Whether Defendants required Plaintiff and Class members to perform unpaid off-the-clock work;

    f.    Whether Defendants paid Plaintiff and Class members the proper compensation for all hours worked under the New York Labor Law;

    g.    Whether Defendants operated their business with a policy of not compensating employees for all hours worked due to fixed salary;

    h.    Whether Defendants paid Plaintiff and Class members the New York State spread of hours premium when their workdays exceeded ten (10) hours; and

    i.    Whether Defendants provided proper wage and hour notice, at date of hiring and with each change in pay rate thereafter, to all non-exempt employees, in their native language, per requirements of the NYLL.

## STATEMENT OF FACTS

### Wand and Hour Claims

28.    In or around June 2017, Plaintiff RAFAEL DE LA CRUZ was hired by Defendants to work as a stocker for Defendants at their location of 1550 Broadway, Brooklyn, New York 11221. Throughout his employment, Plaintiff was frequently required to assist Defendants at other locations on an as needed basis. For example, Plaintiff also worked, on an as needed basis, at (i) 448 Sutter Avenue, Brooklyn, New York 11212 and (ii) 1159 Blake Ave, Brooklyn, NY 11208. Plaintiff was employed by Defendants until on or around September 12, 2022.

29.    Throughout his employment, Plaintiff DE LA CRUZ worked six (6) days per week, Mondays through Saturdays. Plaintiff was scheduled from 9:30 a.m. to 4:30 p.m. However, every day, Plaintiff was required by Defendants to stay past his scheduled time, causing Plaintiff to finish work at or around 7:30 p.m. Plaintiff worked ten (10) hour shifts per day, totaling up to sixty (60) hours per week.

30.    Throughout his employment, Plaintiff DE LA CRUZ regularly worked days exceeding ten (10) hours in length, but Defendants failed to provide Plaintiff with his spread-of-hours premium for the workdays that exceeded ten (10) hours in length. Class Members similarly failed to receive their spread of hours premiums when working shifts that exceeded ten (10) hours in length.

31.    Throughout his employment, Plaintiff DE LA CRUZ was compensated at a fixed salary rate, regardless of the actual amount of hours worked.

32.    From the start of his employment to around June 2019, Plaintiff DE LA CRUZ was compensated at a fixed salary rate of five-hundred dollars ($500) per week. From June 2019 to around June 2021, Plaintiff was compensated at a fixed salary rate of five-hundred and fifty dollars

($550) per week. From June 2021 until the end of his employment, Plaintiff was compensated at a fixed salary rate of six-hundred dollars ($600) per week.

33.     Throughout his employment, Plaintiff DE LA CRUZ was required to clock out for thirty (30) minute meal breaks. On a daily basis, Plaintiff was required by Defendants to work through his break, despite being already off-the-clock. FLSA Collective Plaintiffs and Class Members were also regularly required by Defendants to work through their break, off-the-clock.

34.     Plaintiff, FLSA Collective Plaintiffs, and Class members were not paid all of their wages or their overtime premiums, at a rate of time and one half of the regular hourly rate, for all hours worked due to time-shaving and improper use of a fixed salary.

35.     Defendants failed to properly provide Plaintiff and the Class members with proper wage notices in statutory compliance with the New York Labor Law. Defendants also failed to properly provide Plaintiff and the Class members with proper wage statements in statutory compliance with the New York Labor Law.

36.     Throughout his employment, Plaintiff and Class members could not have received proper wage statements that were in compliance with the NYLL as Defendants failed to satisfy the requirements of the law due to a failure to include accurate hours, wages, overtime, for each payment period. In other words, Plaintiff and Class members did not receive proper wage statements, as their statements failed to accurately reflect the number of hours worked and their proper compensation.

37.     In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that clearly entails a concrete risk of harm to an interest identified by the New York State legislature. Defendants' failure to provide such notices trivializes the importance of these notices in protecting Plaintiffs' interest in ensuring proper pay. Despite

Defendants' conduct, there is a reason why the New York legislature concluded that enacting wage notice provisions would "far better protect workers' rights and interests" than existing penalties. *See* N.Y. Spons. Mem., 2010 S.B. 8380. Written notices function as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves. Deprivation of such notices necessarily entails a significant risk of harm to the employees' concrete interest in being paid properly and timely.

38.    Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class members. Defendants' conduct actually harmed Plaintiff and Class members. Defendants' failure to provide paystubs listing all hours and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest Defendants' calculations, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff and Class members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Moreover, Defendants failure to provide wage notices allowed Defendants to hide the proper frequency of pay to employees. Defendants' failure to provide a wage notice to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

39.    Due to Defendants' failure to provide legally mandated notices such as earning statements and wage notices, Defendants were able to hide their wrongdoing from employees, and continue to attempt to hide their wrongdoing necessitating the current litigation. The failure to provide NYLL notices continues to result in delayed payment of all proper wages owed to Plaintiff and Class members. This delayed payment caused Plaintiff to struggle to timely pay bills. Class members similarly struggle to timely pay debts due to Defendants continued attempts to hide wrongdoing from employees.

40.    Plaintiff and Class members regularly worked days exceeding ten (10) hours in length, but Defendants unlawfully failed to pay Plaintiff and Class members their spread-of-hours premium for workdays that exceeded ten (10) hours in length.

41.    Defendants knowingly and willfully operated their business with a policy of not paying for all hours worked, and the proper overtime rate thereof for all hours worked to Plaintiff, FLSA Collective Plaintiffs, and Class members in violation of the FLSA.

42.    Defendants knowingly and willfully operated their business with a policy of not paying the New York State minimum wage, and the proper overtime rate thereof for all hours worked to Plaintiff, FLSA Collective Plaintiffs, and Class members, due to fixed salary, in violation of the FLSA and the NYLL.

43.    Defendants knowingly and willfully operated their business with a policy of not paying spread-of-hours premium to Plaintiff and Class members, in violation of the NYLL.

44.    Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff and Class members for off-the-clock work, in violation of the NYLL.

45.    Defendants knowingly and willfully operated their business without providing proper wage notices in violation of the NYLL.

46.    Defendants knowingly and willfully operated their business without providing proper wage statements in violation of the NYLL.

### *Plaintiff RAFAEL DE LA CRUZ's Discrimination Claims*

47.    In addition to the above, Plaintiff DE LA CRUZ and other Latin American employees suffered from Defendants' discriminatory practices and the hostile work environment fostered by Defendants, as described below.

48.    Plaintiff DE LA CRUZ is of Dominican heritage.

49.     Throughout his employment, Individual Defendant BASIT H. MOTIWALA created and fostered a hostile work environment when he started racially discriminating against Plaintiff. This hostile work environment would continue on to impact all Latin American employees.

50.     Individual Defendant BASIT H. MOTIWALA has stated "I hate Dominicans" to Plaintiff.

51.     Individual Defendant BASIT H. MOTIWALA said he will not give Plaintiff DE LA CRUZ a pay raise because he "is not black."

52.     At all relevant times, Plaintiff was only one (1) of four (4) Latin American employees at the DOLLAR JUNCTION location at which he was employed.

53.     Defendants operate with a policy of providing all employees with a discount of twenty percent (20%). Individual Defendant BASIT H. MOTIWALA regularly denied this employee discount to Plaintiff DE LA CRUZ, on the basis of his race and national origin. Individual Defendant BASIT H. MOTIWALA would say to Plaintiff and to other Latino workers: "illegal immigrants don't get discounts."

54.     Plaintiff DE LA CRUZ never witnessed Individual Defendant BASIT H. MOTIWALA deny this discount to any other employee.

55.     Plaintiff DE LA CRUZ paid full price for all purchases he made in the store, while his non-Latin American coworkers got to enjoy the luxury of receiving 20% off all their purchases made in the store.

56.     Defendants have a cruel and biased practice of fostering a hostile work environment for employees of Latin American heritage. Because of this biased practice, Plaintiff DE LA CRUZ suffered physical discomfort and emotional humiliation while working for Defendants, which ultimately contributed to his termination.

**Plaintiff RAFAEL DE LA CRUZ's Retaliation Claims**

57.     During his employment with Defendants, Plaintiff suffered from Defendants' retaliatory practices. Despite the fact that employees have the protected right to raise any work-related issue to their employers under the FLSA and the NYLL, Defendants retaliated against Plaintiff and ultimately terminated him for his complaints regarding his missing wages.

58.     Plaintiff DE LA CRUZ complained to Individual Defendant BASIT H. MOTIWALA about the payment shortfalls to Plaintiff.

59.     Individual Defendant BASIT H. MOTIWALA terminated Plaintiff's employment after Plaintiff complained about Defendant's wage and hour violations under the FLSA and NYLL.

60.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class members.

**STATEMENT OF CLAIM**

**COUNT I**

**VIOLATION OF THE FAIR LABOR STANDARDS ACT ON**

**BEHALF OF PLAINTIFF AND FLSA COLLECTIVE PLAINTIFFS**

61.     Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

62.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

63.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

64.   At all relevant times, Corporate Defendants had gross annual revenues in excess of $500,000.

65.   At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their wages, including overtime.

66.   At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their wages, including overtime, due to timeshaving.

67.   At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their wages, including overtime, due to a fixed salary.

68.   Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

69.   Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages, including their proper overtime premium, when Defendants knew or should have known such was due.

70.   Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiff of their rights under the FLSA.

71.   As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

72.   Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA

Collective Plaintiff suffered damages in an amount not presently ascertainable of unpaid wages, unpaid wages and overtime due to timeshaving, unpaid wages and overtime, plus an equal amount as liquidated damages.

73.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## <u>VIOLATION OF THE NEW YORK LABOR LAW</u>

## <u>ON BEHALF OF PLAINTIFF AND CLASS MEMBERS</u>

74.     Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

75.     At all relevant times, Plaintiff and Class members were employed by the Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

76.     At all relevant times, Defendants engaged in a policy and practice of not compensating Plaintiffs and Class Members their proper wages, including overtime, in direct violation of the NYLL.

77.     At all relevant times, Defendants engaged in a policy and practice of not compensating Plaintiffs and Class Members their proper wages, including overtime, due to timeshaving, in direct violation of the NYLL.

78.     At all relevant times, Defendants engaged in a policy and practice of refusing to pay Plaintiff and Class Members the proper minimum wage and overtime due to a fixed salary in direct violation of the NYLL.

79.     Defendants failed to compensate Plaintiffs and Class Members with their spread of hours premiums when working shifts in excess of ten (10) hours per day, in direct violation of the NYLL.

80.     Defendants failed to properly notify employees of their overtime rate, in direct violation of the New York Labor Law.

81.     Defendants knowingly and willfully operated their business with a policy of not providing all non-exempt employees proper wage notice, at date of hiring and annually thereafter, as required under the New York Labor Law.

82.     Defendants knowingly and willfully operated their business with a policy of not providing wage statements, as required under the New York Labor Law.

83.     Due to the Defendants' New York Labor Law violations, Plaintiff and Class members are entitled to recover from Defendants unpaid wages, unpaid wages due to timeshaving, unpaid wages due to a fixed salary, unpaid spread of hours premium, damages for unreasonably delayed payments, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to New York Labor Law.

**COUNT III**

**RETALIATION UNDER THE FAIR LABOR STANDARDS ACT**

84.     Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

85.     At all relevant times, Plaintiff was an employee of Defendants within the meaning of the FLSA, and was a person covered by and intended to benefit from the provisions of the FLSA

86.     Section 15(a)(3) of the FLSA provides that it is a violation for any person to "discharge or in any other manner discriminate against any employee because such employee has filed any

complaint […] under or related to this Act."

87.   As alleged herein, Plaintiff complained to Defendants and its managers regarding Defendants invalid unpayment of wages and unsatisfactory time-shaving policies. In response to such complaints, Defendants terminated Plaintiff under pretextual reasons in violation of Section 15(a)(3).

88.   Defendants' retaliatory termination was in willful disregard of the provisions of the FLSA.

89.   As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff suffered damages in the form of lost earnings. Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of liquidated damages, interests, attorneys' fees and costs, as provided under the FLSA.

## COUNT IV

## RETALIATION UNDER THE NEW YORK LABOR LAW

90.   Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

91.   At all relevant times, Plaintiff was an employee of Defendants within the meaning of the NYLL, and was a person covered by and intended to benefit from the provisions of the NYLL.

92.   Defendants willfully violated the NYLL by retaliating against Plaintiff by discharging him shortly after he raised his concerns about Defendants unlawful policies regarding unpaid wages and time-shaving.

93.   In response to such complaints, Defendants terminated Plaintiff in violation of Section 215 (a).

94.   Defendants' actions constitute a violation of Section 215 of the NYLL. In relevant part,

NYLL § 215(1)(a) states:

> No employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company, or any other person, shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee (1) because such employee has made a complaint to his or her employer, or to the commissioner or his or her authorized representative, or to the attorney general or any other person, that the employer was engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter, or any order issued by the commissioner.

95.   Defendants' conduct was in willful disregard of the provisions of the NYLL.

96.   As a direct and proximate result of Defendants' willful disregard of the NYLL, Plaintiff suffered damages in the form of lost earnings. Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of liquidated damages, interests, attorneys' fees, and costs, as provided for under the NYLL

## COUNT V

## <u>VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW</u>

97.   Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

98.   The New York State Human Rights Law ("NYSHRL") prohibits discrimination in the terms, conditions, and privileges of employment, and the retaliation thereof, on the basis of race and national origin.

99.   Plaintiff DE LA CRUZ was an employee and qualified person within the meaning of the NYSHRL and Defendants are covered employers under the NYSHRL.

100.   Defendants operated a business that discriminated against Plaintiff in violation of Section 296(1)(a) with respect to the terms, conditions, and privileges of his employment because of his race and national origin by creating and fostering a hostile work environment based on Plaintiff's race and national origin.

101.    Defendants' conduct was intentional, malicious, and in reckless disregard of Plaintiff's protected rights under Section 296 of the NYSHRL.

102.    As a result of Defendants' unlawful discriminatory practices, Plaintiff DE LA CRUZ sustained injury, including economic damages and past and future physical and emotional distress.

103.    Due to Defendants' violations under the NYSHRL, based on discrimination on the basis of race and national origin, Plaintiff is entitled to recover from Defendants: (1) back pay; (2) front pay; (3) compensatory damages; (4) punitive damages; and (5) attorney's fees and costs.

104.    Additionally, Defendants violated the NYSHRL by creating and maintaining a hostile work environment. This hostile work environment was created and fostered through pervasive and regular harassment in the form of comments and behavior directed towards Plaintiff.

105.    The hostile work environment was sufficiently severe and pervasive to unreasonably interfere with Plaintiff's employment and/or create an intimidating, hostile, and offensive work environment for Plaintiff, which led to his constructive termination.

106.    As a direct and proximate result of said hostile work environment, Plaintiff suffered and continues to suffer actual damages in various ways, including but without limitation, loss of past and future earnings, mental anguish, and pain and suffering. Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of punitive damages, interest, attorney's fees, and costs, as provided for under the NYSHRL.

## COUNT VI

## <u>VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW</u>

107.    Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

108.    At all relevant times, Plaintiff was an employee within the meaning of the NYCHRL and Defendants are covered employers under the NYCHRL.

109.    Defendants operated a business that discriminated against Plaintiff in violation of the NYCHRL by discriminating against Plaintiff with respect to the terms, conditions, and privileges of his employment because of his race and national origin by creating and fostering a hostile work environment based on Plaintiff's race and national origin.

110.    Defendants conduct was intentional, malicious, and in reckless disregard of Plaintiff's protected rights under the NYCHRL.

111.    As a result of Defendants' unlawful discriminatory practices, Plaintiff sustained injury, including economic damages and past and future physical and emotional distress.

112.    Due to Defendants' violations under the NYCHRL, based on discrimination on the basis of race and national origin, Plaintiff is entitled to recover from Defendants: (1) back pay; (2) front pay; (3) compensatory damages; (4) punitive damages; and (5) attorney's fees and costs.

113.    Additionally, Defendants violated the NYCHRL by creating and maintaining a hostile work environment. This hostile work environment was created and fostered through pervasive and regular discrimination in the form of comments and behavior directed towards Plaintiff.

114.    The hostile work environment was sufficiently severe and pervasive to unreasonably interfere with Plaintiff's employment and/or create an intimidating, hostile, and offensive work environment for Plaintiff, which lead to constructive termination.

115.    As a direct and proximate result of said hostile work environment, Plaintiff suffered and continues to suffer actual damages in various ways, including but without limitation, loss of past and future earnings, mental anguish, and pain and suffering. Plaintiff seeks judgment in an

amount to be determined at trial for these damages as well as an award of punitive damages, interest, attorney's fees, and costs, as provided for under the NYCHRL.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff on behalf of himself, FLSA Collective Plaintiffs and Class members, respectfully request that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA, the NYLL, the NYSHRL, and the NYCHRL;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid wages, including overtime, due to timeshaving due under the FLSA and the New York Labor Law;

d. Am award of unpaid wages, including overtime, due to a fixed salary due under the FLSA and the New York Labor Law;

e. An award of unpaid spread of hours premium due under the New York Labor Law;

f. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation pursuant to 29 U.S.C. § 216;

g. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation, minimum wages, and "spread of hours" premium pursuant to the New York Labor Law;

h.   An award of back and front pay, compensatory damages, punitive damages, and all other penalties the Court deems appropriate as a result of Defendants' willful retaliatory conduct against Plaintiff, pursuant to the FLSA and NYLL;

i.   An award of statutory penalties, prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

j.   An award of backpay, compensatory damages, and punitive damages due under the NYSHRL;

k.   An award of backpay, compensatory damages, and punitive damages due under the NYCHRL;

l.   Designation of Plaintiff as Representatives of the FLSA Collective Plaintiffs;

m.   Designation of this action as a class action pursuant to F.R.C.P. 23;

n.   Designation of Plaintiff as Representatives of the Class; and

o.   Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: December 8, 2022

Respectfully submitted,

By:   /s/ C.K. Lee
      C.K. Lee, Esq.

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, Second Floor
New York, NY 10011
Tel.: 212-465-1188

Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective*
*Plaintiffs and the Class*