**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------

RAFAEL DE LA CRUZ, *on behalf of himself,*
*FLSA Collective Plaintiffs and the Class,*

     Plaintiff,

   v.

BROADWAY FOOD MART INC.,
   d/b/a DOLLAR JUNCTION,
SUTTER DOLLAR DISCOUNT INC.
   d/b/a SUTTER DOLLAR DISCOUNT,
JOHN DOE CORPORATIONS 1-100,
and BASIT H. MOTIWALA,

     Defendants.

-----------------------------------------------------------------

            **Case No.:** 22-cv-10403


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR CONDITIONAL COLLECTIVE CERTIFICATION**


LEE LITIGATION GROUP, PLLC
C. K. Lee, Esq. (CL 4086)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel: (212) 465-1188
Fax: (212) 465-1181

*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

# TABLE OF CONTENTS

EXHIBITS ................................................................................................................... iii

TABLE OF AUTHORITIES ..................................................................................... iv

I.      PRELIMINARY STATEMENT ..................................................................... 1

II.     DEFENDANTS' EGREGIOUS MISCONDUCT REQUIRES IMPLEMENTING AN ADVERSE INFERENCE IN FAVOR OF CERTIFICATION OF A CONDITIONAL COLLECTIVE ............................................................................................... 2

III.    PLAINTIFF'S FLSA COLLECTIVE ACTION CLAIMS ............................... 8

        A.      DEFENDANTS FAILED TO PAY OVERTIME, DUE TO A FIXED SALARY 9

        B.      DEFENDANTS FAILED TO PAY WAGES, INCLUDING OVERTIME, DUE TO TIME SHAVING ................................................................. 11

IV.     DEFENDANTS OPERATE AS A SINGLE INTEGRATED ENTERPRISE ................. 12

        A.      RELATED ACTIVITIES ................................................................ 12

        B.      COMMON CONTROL ................................................................... 13

        C.      COMMON BUSINESS PURPOSE .................................................. 14

V.      PLAINTIFF IS SIMILARLY SITUATED AS COVERED EMPLOYEES .................... 15

VI.     LEGAL STANDARD ................................................................................. 18

        A.      THE COURT SHOULD CERTIFY THE COLLECTIVE ACTION AND ORDER NOTICE ................................................................. 18

                i.      The Standard for Conditional Certification and Notice Is Lenient ............................................................................. 18

                ii.     The Underlying Merits of the Case are Immaterial to the Determination of Conditional Certification and Notice ............. 21

                iii.    Plaintiff Has Made the Modest Factual Showing Required for Conditional Certification ......................................... 22

        B.      EARLY NOTICE TO 'SIMILARLY SITUATED' EMPLOYEES IS APPROPRIATE AND NECESSARY ................................................ 22

                i.      Sending Expedited Notice to "Similarly Situated" Employees Fulfills the FLSA's Broad Remedial Purposes ........................ 23

    C.     DISCOVERY OF NAMES, ADDRESSES AND TELEPHONE NUMBERS IS PROPER AND NECESSARY UNDER § 216(b) ................................................. 24

    D.     THE PROPOSED NOTICE IS FAIR AND ADEQUATE .................................. 25

VII.    EQUITABLE TOLLING.................................................................................................25

VIII.   CONCLUSION............................................................................................................26

**EXHIBITS**

**Exhibit A**       **Proposed Form of Collective Notice**

**Exhibit B**       **NYS DOL Wage Notice Prior to June 2022**

**Exhibit C**       **Wayback Machine Excerpt**

**Exhibit D**       **JDSUPRA With Linked Notice Containing the New Logo**

**Exhibit E**       **Defendants' Interrogatory Responses**

**Exhibit F**       **Individual Defendant's Mobile Number & Contact Numbers of Other Stores**

**Exhibit G**       **Email Correspondence between Plaintiff and Defendants**

**Exhibit H**       **Basit H. Motiwala's Deposition Transcript**

**Exhibit I**       **Employees' Time and Pay Records**

# TABLE OF AUTHORITIES

## CASES

*Access Innovators, LLC v. Usha Martin, LLC*, 2010 U.S. Dist. LEXIS 152303 (N.D. Ga. Apr. 28, 2010) ................................................................................................................. 2

*Anglada v. Linens 'N Things, Inc.*, No. 06 Civ. 12901, 2007 WL 1552511 (S.D.N.Y. Apr. 26, 2007) ............................................................................................. 15, 19, 22, 24

*Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504 (S.D.N.Y. 1998) (Sotomayor, J.) ....... 12, 13

*Balverde v. Lunella Ristorante, Inc.*, 2016 WL 2757430 (S.D.N.Y. May 11, 2016) ................. 20

*Braunstein v E. Photographic Labs.*, 600 F.2d 335 (2d Cir. 1978) ............................................ 22

*Brennan v. Arnheim & Neely*, 410 U.S. 512 (1973) ................................................................... 12

*Cook v. United States*, 109 F.R.D. 81 (E.D.N.Y. 1985) .............................................................. 23

*Cuzco v. Orion Builders, Inc.*, 477, F. Supp. 2d 628 (S.D.N.Y. 2007) ........................... 18, 19, 24

*Dumitrescu v. Mr. Chow Enters., Ltd.*, 2008 U.S. Dist. LEXIS 49881 (S.D.N.Y. June 30, 2008) ............................................................................................................. 21

*Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317 (S.D.N.Y. 2007)..................... passim

*Fonseca v. Dircksen & Talleyrand, Inc.*, 2014 WL 1487279 (S.D.N.Y. April 11, 2014)............ 15

*Foster v. Food Emporium*, 2000 U.S. Dist. LEXIS 6053 (S.D.N.Y. Apr. 26, 2000) .................. 23

*Francois v. Mazer*, 2012 U.S. Dist. LEXIS 26666 (S.D.N.Y. Feb. 28, 2012) ............................ 11

*Garcia v. Chipotle Mexican Grill, Inc.*, 2016 U.S. Dist. LEXIS 153531 (S.D.N.Y. Nov. 4, 2016) ............................................................................................................. 15

*Garriga v. Blonder Builders Inc.*, 2018 U.S. Dist. LEXIS 171887 (E.D.N.Y. Sep. 28, 2018) .... 15

*Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 91 (S.D.N.Y. 2003) ........ 21, 24, 25

*Guaman v. 5 M Corp.*, 2013 WL 5745905 (S.D.N.Y. Oct. 23, 2013) .......................................... 20

*Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340 (E.D.N.Y. 2012) .................... 17

*Hallissey v. Amer. Online, Inc.*, 2008 U.S. Dist. LEXIS 18387 (S.D.N.Y. Feb. 19, 2008).......... 19

*Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651 (S.D.N.Y. 2013) ................................................. 17

*Harhash v. Infinity West Shoes, Inc.*, 2011 U.S. Dist. LEXIS 96880 (S.D.N.Y. Aug. 24, 2011)  17

*Hernandez v. Bare Burger Dio Inc.*, 2013 WL 3199292 (S.D.N.Y. June 25, 2013).................... 17

*Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249 (S.D.N.Y. 1997)........................................ 20, 21, 24

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989)................................................. 22, 23

*Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363 (S.D.N.Y. 2007)................. 19, 20, 23

*Iriarte v. Redwood Deli & Catering, Inc.*, 2008 WL 2622929 (E.D.N.Y. June 30, 2008)........... 16

*Jason v. Falcon Data Com, Inc.*, 2011 WL 2837488 (E.D.N.Y. 2011) ...................................... 16

*Juarez v. 449 Restaurant, Inc.*, 2014 WL 3361765 (S.D.N.Y. July 2, 2014) .............................. 14

*Khalil v. Original Homestead Rest., Inc.*, 2007 U.S. Dist. LEXIS 70372 (S.D.N.Y. Aug. 9, 2007) ............................................................................................................. 16, 20

*Khamsiri v. George. & Frank's Japanese Noodle Rest. Inc.*, 2012 WL 1981507 (S.D.N.Y. June 1, 2012) ........................................................................................................... 16, 26

*King v. FedCap*, 2022 WL 292914 (S.D.N.Y. Feb. 1, 2022) ................................................. 18, 20

*Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346 (E.D.N.Y. 2008) .................................. 21

*Lee v. ABC Carpet Home*, 236 F.R.D. 193 (S.D.N.Y. 2006) ..................................... 19, 24, 25

*Lixin Zhao v. Benihana, Inc.*, 2001 U.S. Dist. LEXIS 10678 (S.D.N.Y. May 7, 2001)......... 16, 20

*Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357 (S.D.N.Y. 2007)................................ 21

*Machuca v. Villaggio Catering Corp.*, No. 14 Civ. 3508, Dkt. No. 43 (E.D.N.Y. Jan. 12, 2015)... ............................................................................................................. 14

*Masson v. Ecolab, Inc.*, 2005 U.S. Dist. LEXIS 18022 (S.D.N.Y. Aug. 17, 2005) .................... 20

*Mazur v. Olek Lejbzon & Co.*, 2005 WL 3240472 (S.D.N.Y. Nov. 29, 2005)............................ 20

*Mentor v. Imperial Parking Sys.*, 246 F.R.D. 178 (S.D.N.Y. 2007)....................................... 19, 21

*Moore v. Eagle Sanitation, Inc.*, 276 F.R.D. 54 (E.D.N.Y. 2011)................................................ 17

*Patton v. Thomson Corp.*, 364 F. Supp. 2d 263 (E.D.N.Y. 2005) ......................................... 23, 24

*Pefanis v. Westway Diner, Inc.*, 2008 U.S. Dist. LEXIS 81082 (S.D.N.Y Oct. 8, 2008)............. 16

*Ramos v. DNC Food Serv. Corp.*, 2020 U.S. Dist. LEXIS 96123 (S.D.N.Y. June 1, 2020)........ 25

*Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303 (S.D.N.Y. 1998) .................................................. 20

*Sanchez v. Gansevoort Mgmt. Grp., Inc.*, 2013 U.S. Dist. LEXIS 9739 (S.D.N.Y. Jan. 10, 2013)
........................................................................................................................................................ 17

*Sherrill v. Sutherland Global Servs.*, 487 F. Supp. 2d 344 (W.D.N.Y. 2007)............................. 24

*Sipas v. Sammy's Fishbox, Inc.*, 2006 U.S. Dist. LEXIS 24318 (S.D.N.Y. Apr. 24, 2006)......... 16

*Toure v. Cent. Parking Sys. of N.Y.*, 2007 U.S. Dist. LEXIS 74056 (S.D.N.Y. Sept. 28. 2007)......
.............................................................................................................................................. 19, 21, 23

*Vargas v. Peltz*, 901 F. Supp. 1572 (S.D. Fla. 1995) .................................................................... 2

*Winfield v. Citibank, N.A.*, 843 F. Supp.2d 397 (S.D.N.Y. 2012) ......................................... 15, 17

*Wong v. Hunda Glass Corp.*, 2010 U.S. Dist. LEXIS 62653 (S.D.N.Y. June 22, 2010) ............ 11

*Young v. Cooper Cameron Corp.*, 229 F.R.D. 50 (S.D.N.Y. 2005) ............................................ 21

## STATUTES

29 U.S.C. § 203(r) ......................................................................................................................... 12

29 U.S.C. § 207(a)(1) ...................................................................................................................... 9

29 U.S.C. § 216(b) ...................................................................................................... 20, 23, 25

29 U.S.C. § 255 .............................................................................................................................. 23

29 U.S.C. § 256(b) ......................................................................................................................... 23

## RULES

Fed. R. Civ. P. 23 ........................................................................................................................... 20

## REGULATIONS

12 N.Y.C.R.R. § 142-2.2 ................................................................................................................. 9

29 C.F.R. § 770.221 ....................................................................................................................... 13

29 C.F.R. § 779.206(a)................................................................................................................... 12

## I.    PRELIMINARY STATEMENT

Plaintiff has brought FLSA claims on behalf himself and all current and former non-exempt employees, including, but not limited to, clerks, cashiers, stockers, and sales associates, employed by BROADWAY FOOD MART INC., SUTTER DOLLAR DISCOUNT INC., and BASIT H. MOTIWALA ("Defendants"), at their New York facilities on or after December 8, 2016, a date which is six (6) years prior to the filing of this matter's Complaint ("Covered Employees"). By this motion, Plaintiff seeks conditional collective certification for a class of Covered Employees, and for the further relief sought in the Proposed Order attached as **Exhibit 1** to the Notice of Motion.

Plaintiff is entitled to this relief because he has substantially alleged policies that, if proven true, violate the FLSA.  **<u>First</u>**, Plaintiff has pleaded that Defendants required Covered Employees to work hours over forty in a workweek, but would compensate these Covered Employees on a fixed salary without payment of overtime hours owed pursuant to the Fair Labor Standards Act ("FLSA").  **<u>Second</u>**, Plaintiff has pleaded that Defendants required Covered Employees to perform job duties off-the-clock and without compensation that are more than *de minimis*, and which occurred prior to Defendants permitting Covered Employees to clock-in and after Covered Employees clocked-out.

Defendants are aware that their conduct is in violation of the FLSA.  The violation and Defendants' awareness of it is foremost shown by Defendants' bad-faith attempts at concealing discovery and fabricating evidence. As Plaintiff can prove the withholding and fabrication of evidence, the Court must consider Defendants' deceptive practices and adversely infer that the evidence being hidden by Defendants would have supported Plaintiff's motion for a collective. While Plaintiff's showing is strong enough to warrant conditional collective certification without

1

an adverse inference, Defendants must not be rewarded for withholding relevant, material information.

As detailed below, Plaintiff has substantially alleged that he and others were knowingly denied overtime wages owed to them for time spent completing required work in violation of the FLSA. Accordingly, Plaintiffs have met the lenient standard to demonstrate their entitlement to inform Covered Employees of the pendency of this action.

## II.    DEFENDANTS' EGREGIOUS MISCONDUCT REQUIRES IMPLEMENTING AN ADVERSE INFERENCE IN FAVOR OF CERTIFICATION OF A CONDITIONAL COLLECTIVE

Defendants have spent the entirety of discovery attempting to fabricate evidence, withholding document and information, and lying regarding the scope of their business. At every turn, to receive even the limited discovery Plaintiff has received, Plaintiff has been forced to present indisputable evidence to the Court of Defendant's dishonesty. While no credibility determinations may be made at this stage of litigation, the conditional certification stage, the continued dishonesty from Defendants demonstrates the knowledge that other employees' rights have been violated in the same manner as Plaintiff's.

As Courts across the Country have held, "[w]hen a party fabricates a document or provides false evidence relating to a key issue in a case, courts have made clear that the appropriate sanction is the ultimate sanction of dismissal." *Access Innovators, LLC v. Usha Martin, LLC*, 2010 U.S. Dist. LEXIS 152303, at *9 (N.D. Ga. Apr. 28, 2010); *see also Vargas v. Peltz*, 901 F. Supp. 1572 (S.D. Fla. 1995) (finding that case ending sanctions are especially appropriate "where a party manufactures evidence which purports to corroborate its substantive claims").

Here, Defendants have been caught lying and fabricating evidence on numerous occasions. Despite a case ending sanction of a class-wide default being appropriate, Plaintiff in this motion

seeks only an adverse inference as to Defendants' withheld documents.  As will be made plain from the conduct detailed below, Defendants' unlawful withholding of documents, and false statements has frustrated Plaintiff's efforts to collect discovery, which could have been used to support their case in chief.  As Defendants cannot be rewarded for bad faith efforts, the Court must take the result of Defendants' bad-faith, fewer documents and missing evidence, into account when reviewing this motion.

Below, Plaintiff provides the indisputably false statements and unjustifiable fabrications uncovered by Plaintiff to date and which, in accordance with the above case law, require the implementation of an adverse inference against Defendants.

**First**, Defendants fabricated Plaintiff's wage notice. Ever since this lawsuit was filed, Defendants maintained a lie that Plaintiff's employment began in June 2022.  In support of this lie, Defendants fabricated Plaintiff's wage notice to a June 2022 start date. *See* ECF 46-1, Declaration of Djibirirou Sall, ¶ 6 ("I personally hired the Plaintiff Rafael De La Cruz on June 1, 2022, he gave me a copy of his Social Security Card and Permanent Resident Card showing he is allowed to work in the United States. He completed all necessary forms, consisting of Employee Job Application Form, I-9 Form, W-4 Form and Wage Notice and dated them June 1, 2022 and gave to me."). Defendants' forged wage notice is obvious and ludicrous.

As has been brought to the Court's attention, Defendants clearly backdated the wage notice it produced as to Plaintiff.  Plaintiff's signature is on a pay notice form identified as form LS 55S (09/22), which Plaintiff knows was not available at the time of Plaintiff's signature on June 1, 2022.  In fact, the "9/22" denotes month and year of publication.  This is made obvious through the following:

One, the New York State Department of Labor's response to Plaintiff's Freedom of Information Law request. The official responses from the New York State Department of Labor unequivocally confirms that the wage notice submitted to Plaintiff could not have been submitted on June 1, 2022, as Defendants claim. The response confirms that, prior to July 2022, the pay notice used by Defendants was not issued or available. The New York State Department of Labor confirms that the form Plaintiff signed only became available after August 2022. Attached as **Exhibit B** are the forms available prior to July 2022 and the forms that became available after August 2022, named "LS 55S (09/22)".

Two, a review of the Wayback Machine, an initiative of the Internet Archive, a 501(c)(3) non-profit, which is designed to record and capture snapshots of websites to preserve a digital library of the internet as it existed at any given point in time.  According to a search on this website, the pay notice being published by the NYS DOL from May 27, 2021 to July 10, 2022 was a form identified as "LS 55S (01/17). *See* **Exhibit C**, Wayback Machine Excerpt. As Plaintiff supposedly signed on June 1, 2022, this newer form would not have been available when Plaintiff supposedly signed.

Three, a contemporaneous legal article found on JDSUPRA[1] notes that the NYS DOL updated their pay notice forms in September 2022 with NYS DOL's updated logo. *See* **Exhibit D**, JDSUPRA With Linked Notice Containing the New Logo.  A review of the LS 55S (09/22) form, which contains Plaintiff's signature shows that this form used that updated logo.  Once again, this means that the document would not have been available on June 1, 2022.

**Second**, Defendants withheld records of Plaintiff. To support their lie that Plaintiff began employment on June 1, 2022, Defendants only produced Plaintiff's time records starting June 1,

---

[1] https://www.jdsupra.com/legalnews/what-s-new-with-the-new-york-state-1071462/

4

2022. On February 13, 2023, Plaintiff submitted to Defendants his own punch cards demonstrating work prior to June 2022. Defendants in their interrogatory responses accepted the authenticity of Plaintiff's punch records, but even presently continue to withhold documentation from that period. In fact, on February 14, 2023, Defendants coerced Plaintiff into dropping this lawsuit, and have also threatened to terminate Plaintiff's employment if he did not sign a declaration stating that his employment with Defendants commenced in June 2022. *See* De La Cruz Retaliation Decl. ¶ 1-7.

      **<u>Third</u>**, Defendants lied about the scope of their businesses. In their response to Plaintiff's First Request for Interrogatories, Defendants dishonestly stated that they had no other ownership except the purported location of Plaintiff's employment. *See* **Exhibit E**. Defendants' Interrogatory Responses. As Mr. Motiwala's personal cell number is linked to multiple dollar stores and food marts throughout the city, Plaintiff suspected Defendants of lying. *See* **Exhibit F**, Mr. Motiwala's Mobile Number and the Contact Number of Other Stores. Immediately upon receiving these responses, Plaintiff scheduled a meet and confer, which occurred on September 11, 2023. During the Parties' September 11, 2023, meet and confer, Plaintiff discussed in good faith that Defendants' businesses were being withheld from Plaintiff, and provided an explanation to this belief. Only after revealing this knowledge did Defendants amend their interrogatory responses to include some, but not all locations, that Defendants own. To further their swindling tactics, Individual Defendant contradicted the interrogatory response and lied under oath repeatedly, and again excluded some locations of the businesses he is involved in. *See* **Exhibit H**, Basit H. Motiwala's deposition transcript at p. 12:21-22; 13:1-4 ("**Q**: Any other stores that you owned? **A**: No [Identifying only (i) Sutter Dollar Discount, (ii) Debevoise Discount, (iii) Broadway Food Mart, Inc.]...**Q:** Any other stores that you owned other than these three? **A:** Other than this? Yes, I own Blake Food Mart, Inc.). After multiple meet and confers, a Court hearing, Plaintiff's motions to

compel, and two sets of interrogatory responses, Defendants after being pressed at deposition admit that they have been hiding yet another location and even more employees from Plaintiff.

**Fourth**, Defendants hid and continue to hide the totality of potential class and collective members. On August 31, 2023, at 1:54 pm, Plaintiff received the below class list from Defendants:

| | | Broadway Food Mart Inc. | | | |
|---|---|---|---|---|---|
| | | Employee List | | | |
| Employee Id | Employee | Address line 1 | City ST ZIP | Contact | Working Period |
| 1001 | Djibirirou Sall | | Brooklyn, NY  11208 | | 10/05/2015 to Present |
| 1002 | Bintou B. Toure | | Brooklyn, NY  11221 | | 10/05/2015 to 01/06/2019 |
| 1003 | Farhana Kausar | | Brooklyn, NY  11204 | | 10/12/2015 to 02/06/2022 |
| 1004 | Sekouba Sylla | | Brooklyn, NY  11233 | | 10/12/2015 to Present |
| 1010 | Delowara Akhter | | Brooklyn, NY  11208 | | 11/11/2019 to Present |
| 1017 | Sharmin Akter | | Brooklyn, NY  11208 | | 02/14/2022 to Present |
| 1018 | Rafael De La Cruz De L | | Brooklyn, NY  11221 | | 05/30/2022 to Present |
| 1019 | Ehssan M Saeed | | Brooklyn, NY  11207 | | 02/27/2023 to Present |

As the list was obviously incomplete, our office called and met and conferred with Defendants regarding its inadequacy within the hour. *See* **Exhibit G**, Email Correspondence After Meet and Confer. Plaintiff informed Defense counsel that the list **must** be incomplete due to (i) the fact the Employee IDs clearly show other employees existed, (ii) the duration of each employee's employment period was fantastical, and (iii) the number of Class members for a business of this kind was too small on its face. Defense counsel assured us that the list was complete, and stated he would check with his client. *See* id.

Since that initial conversation, additional meet and confers have occurred, the issue was raised with the Court, and a hearing was held. Throughout the entirety of those proceedings, Defendants maintained the above list contained all putative class members who worked at Broadway Food Mart Inc. Now, upon a demand of proof, Defendants admit they have been lying.

During the October 11, 2023, hearing, Defendants claimed that they investigated the above Class list and the Employee ID discrepancy. They explained the discrepancy to the Court by claiming an independent accounting firm set the Employee IDs, and Defendants had no notion as to why the Employee IDs appeared to skip individuals.

6

Not believing Defendants' explanation, particularly given the other lies told in this matter, Plaintiff's counsel requested the name of this undisclosed accounting firm. The Court granted Plaintiff's request and Ordered the accounting firm be identified by October 18, 2023. Defendants failed to identify the firm by that date. Only upon threat of sanction from the Court did Defendants make the unsurprising admission that there is no independent accounting firm. Ironically, the lie of the accounting firm was used by Defendants to escape sanctions for their other lies in this matter.

Defendants' next lie to the Court, that the class produced only contained active employees due to some internal confusion, is as equally absurd as the other lies told in this matter. _One_, even a quick review of the above list shows that two (2) former employees were included. Therefore, the explanation that Defendants only provided active employees is proven untrue on its face. _Two_, this newest lie does not explain why Defendants did not uncover the withholding of former employees when they investigated the missing Employee IDs, which was the subject of multiple meet and confers, a sanctions motion, and a hearing before the Court. _Three_, this newest lie does not explain why Defendants manufactured the existence of an independent accounting firm as the creator of these Employee IDs.

After confronting Defendants regarding the businesses they have left off their disclosures, Defendants acknowledged that they failed to disclose at least one other location, containing putative Class Members. When given that the Broadway location and Debevoise location have the same ownership and business model, one would expect them to have a similar class size.

7

Below is the list of employees for the Debevoise location supplied by Defendants, which identifies only five (5) employees rather than Broadway Food Mart Inc.'s twenty (20) employees:

| Debevoise Discount Store | | |
|---|---|---|
| **Employee** | **Address line 1** | **City ST ZIP** |
| Anika Sultana | | Brooklyn, NY  11216 |
| Mohamed Camara | | Brooklyn, NY  11207 |
| Alea Begum | | Brooklyn, NY  11208 |
| Rakib Ahmed | | Brooklyn, NY  11218 |
| Delowara Akhter | | Brooklyn, NY  11208 |

Only after proving Defendants withheld identifying employees from the Broadway Food Mart, Inc. class list, Defendants updated that list to identify 20 employees. Defendants' continued claim that the Debevoise location has only had five (5) employees is just as untrue as their prior claim that the Broadway location only employed seven (7) employees. No employee list has been produced as to the Sutter Discount or Blake Food Mart locations despite the August 17, 2023, Court Order.

As the Court is aware, Defendants have been dishonest throughout this litigation. Despite stern guidelines from the Court, Defendants continue to engage in vexatious and dilatory conduct. For the reasons above, Plaintiff seeks an adverse inference against Defendants.

## III.    PLAINTIFF'S FLSA COLLECTIVE ACTION CLAIMS

Plaintiff DE LA CRUZ worked for Defendants from in or around June 2017 until in or around October 2023. *See* Plaintiff's Decl. ¶ 1.

During Plaintiff's employment with Defendants, as provided in his declaration filed in support of this motion, Plaintiff suffered significant wage and hour violations. Plaintiff Decl. ¶ 8-10. Plaintiff also personally observed and conversed with other workers employed by Defendants suffering from the same policies. Plaintiff Decl. ¶ 11. Specifically, Plaintiff and all other

employees suffered from Defendants' policy of 1) failing to pay proper wages, including overtime, due to a fixed salary and 2) timeshaving. Plaintiff Decl. ¶ 6-8, 10, 12-13.

### A. DEFENDANTS FAILED TO PAY OVERTIME, DUE TO A FIXED SALARY

Under the FLSA, 29 U.S.C. § 207(a)(1) requires employers to pay overtime premium to employees for hours in excess of forty hours per week at a rate "not less than one and one-half times the regular rate." Similarly, under the NYLL, 12 N.Y.C.R.R. § 142-2.2 requires that "an employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate." Under both the FLSA and the NYLL, all non-exempt employees are entitled to overtime pay, at time and a half their regular rate for all hours worked beyond forty work-hours in a given work week.

Here, Defendants' own records reveal that they failed to compensate Plaintiff and Covered Employees the proper wages for all the hours worked, and paid all employees a fixed salary, irrespective of the hours they worked. *See* **Exhibit I**, Plaintiff's Time and Pay Records.

- During the workweek of October 7, 2019 – October 11, 2019, Plaintiff worked a total of 62.18 hours. For this same week, Plaintiff is recorded as receiving a payment of four hundred and sixty dollars ($460.00). This amounts to seven dollars and thirty-nine cents ($7.39) per hour. In 2019, the minimum wage was fifteen dollars ($15.00) per hour in New York City. Plaintiff was not compensated overtime and earned less than half the required minimum wage per hour. **Exhibit I**.

- During the workweek of January 28, 2019 – February 2, 2019, Plaintiff worked a total of 57.08 hours. For this same week, Plaintiff is recorded as receiving a payment of five hundred and fifty dollars ($550.00), or nine dollars and sixty-three cents ($9.63) per hour. Once again, in 2019, the minimum wage was fifteen dollars ($15.00) per hour in New York City. Plaintiff was not compensated overtime and earned less the required minimum wage per hour. *Id.*

- During the workweek of August 17, 2020 - August 22, 2020, Plaintiff worked a total of 50.43 hours. Plaintiff is recorded as receiving a payment of six hundred dollars ($600.00) in wages. This amounts to eleven dollars and eighty-nine cents (11.89) per hour. In 2020, the minimum wage was fifteen dollars ($15.00) per hour in New York City. Once again, Plaintiff was not compensated overtime and earned less the required minimum wage per hour. *Id.*

At first, Defendants acknowledged that these time and pay records came from their punch-in machine and accurately reflected Plaintiff's work hours. Only later did Defendants change their story, a common occurrence throughout this litigation, and claim that the attached records were not from their punch-in machine and were actually forged. *See* **Exhibit E**.

Additionally, from the start of Plaintiff's employment until in or about June 2022, Plaintiff was paid solely in cash. Plf. Decl. at ¶10. After June 2022 until September 2023, Plaintiff was compensated by check on a weekly basis at a fixed rate of $600.00 per week, regardless of how many hours he worked each day. *id.* Plaintiff's Punch records from Defendants reveals he worked hours in excess of forty (40) weekly. *See* **Exhibit I**.

Further, Plaintiff attests to the scope of the violation, and provides a list of co-workers who were similarly effected:

| Name | Position | Locations of Work |
|------|----------|-------------------|
| Jose [LNU] | Stocker | Chauncey Street, Brooklyn |
| Osbin [LNU] | Stocker | Gates Avenue, Brooklyn |
| Oscar [LNU] | Stocker | DeKalb Avenue, Brooklyn |
| Johnny [LNU] | Stocker | Broadway, Brooklyn |
| Ana Cruz | Stocker | (i) Gates Avenue, Brooklyn; (ii) Chauncey Street, Brooklyn |
| Julio [LNU] | Stocker | (i) Gates Avenue, Brooklyn; (ii) Chauncey Street, Brooklyn |
| Fadia [LNU] | Manager | Broadway, Brooklyn and others |
| Abdallah [LNU] | Stocker | Broadway, Brooklyn |
| Edwin [LNU] | Stocker | Chauncey Street, Brooklyn |

Plf. Decl. at ¶5.

At all relevant times, Defendants improperly paid Plaintiff and Covered Employees at a fixed salary without compensating for overtime hours worked, in violation of the FLSA and NYLL. Plaintiff Decl. ¶ 8. There was never any agreement that Plaintiff's and Covered Employees' fixed salary was intended to cover the overtime hours in excess of forty that they worked. *Id*. Under

the FLSA and NYLL "a fixed salary [will not] be deemed to include an overtime component in the absence of an express agreement." *See Francois v. Mazer*, 2012 U.S. Dist. LEXIS 26666, at *4 (S.D.N.Y. Feb. 28, 2012) (citing *Wong v. Hunda Glass Corp.*, 2010 U.S. Dist. LEXIS 62653, at *2 (S.D.N.Y. June 22, 2010)).

As a result of Defendants' unlawful practices, Plaintiff and Covered Employees were improperly paid below the New York statutory minimum wage, and denied all overtime premiums, in violation of the FLSA and the NYLL.

### B.   DEFENDANTS FAILED TO PAY WAGES, INCLUDING OVERTIME, DUE TO TIME SHAVING

During Plaintiff's employment by Defendants, he did not receive his proper wages, including overtime compensation, despite working over forty hours per workweek due to time shaving. Plaintiff Decl. ¶ 13.  Plaintiff was not compensated for all his hours worked due to Defendants' time shaving policies. *Id.* As detailed in Plaintiff's Declaration, Plaintiff was required to clock out for thirty (30) minute meal breaks but was required to work through it. Plaintiff Decl. ¶ 13. However, Plaintiff was never compensated for the off-the-clock work, including overtime hours, that he worked beyond his shift. *Id.*  Plaintiff regularly observed his coworkers suffer from Defendants' illegal policy of not paying for all hours worked, including overtime, due to time shaving. Plaintiff Decl. ¶ 13.

For example, in Plaintiff's workweek of January 21, 2019, to January 26, 2019, Defendants deducted approximately thirty (30) minutes from Plaintiff's daily hours each day. Same can be observed for the workweek of August 3, 2019, to August 8, 2019. *See* **Exhibit I**. This happened every day throughout Plaintiff's employment with Defendants. In addition to compensating Plaintiff and Covered Employees on a fixed salary basis, Defendants also time shaved Plaintiff and Covered Employees of an approximate thirty (30) minutes every day.

11

IV.    **DEFENDANTS OPERATE AS A SINGLE INTEGRATED ENTERPRISE**

The fact that Defendants' Covered Employees are all victims of the same common pay policies is also demonstrated by Defendants' common ownership and common management. Individual Defendant owns and operates Corporate Defendants in this matter as a single integrated enterprise. Corporate Defendants operate at least four (4) Stores, but Plaintiff suspects Defendants' dishonesty on this subject continues, and that there are more stores associated with Defendants, for which we will compel collective information. Although Defendants' Stores have different names, they effectively operate as one single company, under the common control of the Individual Defendant Basit H. Motiwala.

Defendants operate as a single integrated enterprise within the meaning of the FLSA. The FLSA provides that the term, "[e]nterprise means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all activities whether performed in one or more establishments…" 29 U.S.C. § 203(r). The three elements to be satisfied are (1) related activities, (2) common control and (3) common business purpose. *See Brennan v. Arnheim & Neely*, 410 U.S. 512, 518 (1973); *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504 (S.D.N.Y. 1998) (Sotomayor, J.)).

A.    <u>**RELATED ACTIVITIES**</u>

"Related activities" are those which are "the same or similar," or are "auxiliary or service activities." *Archie*, 997 F. Supp. at 525 (quoting 29 C.F.R. § 779.206(a)). Auxiliary and service activities include "all activities which are necessary to the operation and maintenance of the particular business, such as warehousing, bookkeeping, or advertising." *Id*. Business entities that provide "mutually supportive services to the substantial advantage of each entity" are operationally interdependent and may be treated as a single enterprise under the FLSA. *Id*.

12

a) Defendants' Dollar Stores are engaged in the same business of providing discounted goods, ranging from cleaning supplies, seasonal items and toys, kitchen essentials, laundry supplies, and food and beverages, including the basics like milk, eggs, and bread. Plaintiff Decl. ¶ 3.

b) Employees, supervisors, managers, and supplies are used among all of Defendants' Stores and interchanged, on an as needed basis. Plaintiff Decl. ¶ 3.

    i. Plaintiff and Covered Employees were transferred between stores on an as needed basis. Throughout his employment, Plaintiff has primarily worked at 1550 Broadway, Brooklyn, NY 11221 ("Broadway Location"), but was directed by Defendants to transfer over to other locations, including Stores located at 448 Sutter Avenue, Brooklyn, NY 11235 ("Sutter Location") and 1159 Blake Ave, Brooklyn, NY 11208 ("Blake Location"). Plaintiff Decl. ¶ 6; Perez Decl. ¶ 1.

    ii. Plaintiff personally observed supplies being exchanged between the Stores on an as needed basis. Plaintiff Decl. ¶ 3; Perez Decl. ¶ 1.

    iii. Plaintiff and Covered Employees, regardless of Store locations, are all managed directly by Individual Defendant. In fact, Plaintiff was able to and did make complaints directly to Individual Defendant BASIT H. MOTIWALA during his employment. Plaintiff Decl. ¶ 12.

    iv. When deposing Individual Defendant Basit H. Motiwala, he admitted to owning at least three (3) of the Dollar Junction stores. *See* Motiwala Dep. ¶

    v. The Stores shared executive management, phone number, and assistance lines.

    vi. Defendants purchased and negotiated prices of merchandise and inventory in bulk, and supplied the Stores on an as needed basis.

Since the foregoing facts demonstrate "mutually supportive services to the substantial advantage of each entity," the first prong is satisfied.

### B.   <u>COMMON CONTROL</u>

"Control" is the power to "direct, restrict, regulate, govern, or administer the performance" of the related activities, and "common control" exists "where the performance of the described activities are controlled by one person or by a number of persons, corporations, or other organizational units acting together." *Archie*, 997 F. Supp at 526 (quoting 29 C.F.R. § 770.221).

a) Defendants have one streamlined practice for interviewing and hiring employees, e.g., once an employee is hired by any of Defendants' Companies, he or she is thereafter employed by all of Defendants' Companies. Plaintiff Decl. ¶ 3. Plaintiff

13

himself was hired to work for Defendant BROADWAY FOOD MART INC. but nevertheless was also effectively employed by SUTTER DOLLAR DISCOUNT INC, and JOHN DOE CORPORATIONS 1-100. Plaintiff Decl. ¶ 6.

b) Plaintiff and Covered Employees did not have to fill out additional on-boarding documents (e.g., I-9s, wage notices) when transferring to a different location. Plaintiff Decl. ¶ 6.

c) All of the Companies share common pay practices with regard to employees and all employees either report to a central location to receive wages from Defendants' Companies, without distinction among Defendants' Companies. Plaintiff Decl. ¶ 3.

Based on the common ownership of Defendants, and the collective management of their employees, Defendants satisfy this second prong of "common control".

## C.    COMMON BUSINESS PURPOSE

The common business purpose prong is satisfied because, as demonstrated above, Defendants collectively operated the Companies and managed all employees who worked at the Companies.

The foregoing establishes that Defendants operate the Companies such that they are collectively (1) engaging in related activities, (2) exercising common control, and (3) serving a common business purpose. Because Defendants operate the Companies as a single integrated enterprise, this conditional collective certification is appropriate for employees of all Corporate Defendants and all Store Locations. *See Machuca v. Villaggio Catering Corp.*, No. 14 Civ. 3508, Dkt. No. 43 (E.D.N.Y. Jan. 12, 2015) (granting plaintiffs' motion for FLSA collective certification for different stores based on common ownership, logo, menu and website on which defendants advertise all locations); *Juarez v. 449 Restaurant, Inc.*, 2014 WL 3361765, at *4-5 (S.D.N.Y. July 2, 2014) (inferring that unlawful pay policies implemented at one store extended to other locations because all stores were run as an "integrated enterprise" with common ownership and same menu, décor and website).

14

In keeping with the shared policies and management detailed above, through this motion, Plaintiff seeks to represent a collective class of employees under the FLSA comprised of all current and former non-exempt employees, including, but not limited to, clerks, cashiers, stockers, and sales associates, employed by Defendants in the last six years. *See Garcia v. Chipotle Mexican Grill, Inc.*, 2016 U.S. Dist. LEXIS 153531, at *27-29 (S.D.N.Y. Nov. 4, 2016) (this Court "conditionally certify[ing] this case as a citywide collective action . . . as to Plaintiff's time shaving claim under the FLSA."). *See Garriga v. Blonder Builders Inc.,* 2018 U.S. Dist. LEXIS 171887 at *15-17 (E.D.N.Y. Sep. 28, 2018) (granting conditional collective certification for six (6) years from the date of the filing of the Complaint as "[m]ultiple courts in the East District, including this Court have held that in some circumstances where a case involves both NYLL and FLSA claims, it promotes judicial economy to send notice of the lawsuit to all potential plaintiffs at the same time even though some individuals may only have timely NYLL claims.") (internal citations omitted). *Fonseca v. Dircksen & Talleyrand, Inc.,* 2014 WL 1487279, at *6 (S.D.N.Y. April 11, 2014) (approving request for a six-year notice period); *Winfield v. Citibank, N.A.,* 843 F. Supp.2d 397, 410 (S.D.N.Y. 2012) (same). *Anglada v. Linens 'N Things, Inc.*, 2007 U.S. Dist. LEXIS 39105 (S.D.N.Y. Apr. 26, 2007) (granting nationwide conditional certification for all assistant store managers of merchandising business based on the declaration of one plaintiff).

## V.    PLAINTIFF IS SIMILARLY SITUATED AS COVERED EMPLOYEES

At all relevant times, Plaintiff DE LA CRUZ worked as a stock person. Plaintiff Decl. ¶ 1. Based on his personal observations and direct conversations with co-workers, other workers employed Defendants similarly suffered from Defendants' common policy of failing to pay wages, including overtime, due to a fixed salary and failing to pay wages, including overtime, due to time shaving. Plaintiff Decl. ¶ 5, 8, 10.

Plaintiff's allegations in the pleadings and Plaintiff's Declaration are sufficient to make a modest factual showing to support conditional certification. *See, e.g., Khalil v. Original Homestead Rest., Inc.*, 2007 U.S. Dist. LEXIS 70372, at *3 (S.D.N.Y. Aug. 9, 2007) (certifying collective action based upon complaint and one affidavit); *Sipas v. Sammy's Fishbox, Inc*., 2006 U.S. Dist. LEXIS 24318, at *8 (S.D.N.Y. Apr. 24, 2006) (certifying collective action based upon complaint and affidavits); *Jason v. Falcon Data Com, Inc*., 2011 WL 2837488 (E.D.N.Y. 2011) (certifying collective action based upon complaint and one affidavit); *Lixin Zhao v. Benihana, Inc*., 2001 U.S. Dist. LEXIS 10678, at *2 (S.D.N.Y. May 7, 2001) (certifying based upon one affidavit founded on plaintiff's "best knowledge").

Plaintiff's declarations attest to Defendants' common policies of FLSA violations. Plaintiff's own experiences and best knowledge based on his personal observations and conversations shared with Covered Employees sufficiently support his assertions that Defendants uniformly applied employment policies and compensation schemes to all Covered Employees. Plaintiff Decl. ¶ 5, 8, 10.

Affidavits by themselves should be sufficient because the Court at this point is not to ascertain the reliability of such affidavits, just whether such affidavits allege a common policy of violations. Courts in the Second Circuit have regularly granted conditional certification based on only one affidavit. *See Khamsiri v. George. & Frank's Japanese Noodle Rest. Inc*., 2012 WL 1981507 (S.D.N.Y. June 1, 2012) (granting conditional collective certification based on a single affidavit); *Iriarte v. Redwood Deli & Catering, Inc.*, 2008 WL 2622929 (E.D.N.Y. June 30, 2008) (conditional collective certification was granted based on only one plaintiff declaration); *Pefanis v. Westway Diner, Inc.*, 2008 U.S. Dist. LEXIS 81082, at *3-4 (S.D.N.Y Oct. 8, 2008) (granting conditional collective certification in a case with single plaintiff and no opt-ins); *Hernandez v.*

*Bare Burger Dio Inc.*, 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013) ("courts in this circuit have routinely granted conditional collective certification based solely on the personal observations of one plaintiff's affidavit"). Here, Plaintiff has submitted an affidavit with specific allegations about how he and Covered Employees were not paid for all their hours worked under a common policy of unpaid wages, including overtime, due to a fixed salary, and unpaid wages, including overtime, due to time shaving.

While the declarations standing alone should be sufficient, here, Plaintiff has provided far more than just a declaration. Here, Plaintiff has provided documentary proof regarding the common policies and management maintained throughout Defendants' enterprise and time and pay records corroborating of the complained discrepancies.

Plaintiff's allegations rely not just on his own observations and documents but also on hearsay from co-workers. Courts in this Circuit regularly rely on hearsay evidence to determine the propriety of sending a collective action notice. *Sanchez v. Gansevoort Mgmt. Grp., Inc.*, 2013 U.S. Dist. LEXIS 9739, at *1 (S.D.N.Y. Jan. 10, 2013); *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 644 (S.D.N.Y. 2013) (citing *Moore v. Eagle Sanitation Inc.*, 276 F.R.D. 54, 59 (E.D.N.Y. 2011)). "Such approach is consistent with the purpose of conditional certification which is only a preliminary determination as to whether there is a sufficient showing to warrant notice being sent to the purported collective class." *Winfield v. Citibank, N. Am.*, 843 F. Supp. 2d 397, 402-403 (S.D.N.Y. 2012). *See also Harhash v. Infinity West Shoes, Inc.*, 2011 U.S. Dist. LEXIS 96880, at *3-4 (S.D.N.Y. Aug. 24, 2011) (granting conditional class certification in part based on plaintiffs' statements that they had spoken with or knew of other sales employees of defendants' shoe stores that complained of the same compensation policies); *Guzelgurgenli v. Prime Time Specials Inc*., 883 F. Supp. 2d 340, 352 (E.D.N.Y. 2012) (relying on the plaintiffs' allegations that three other

delivery drivers for defendants' stores, who were identified only by first name, complained that they too were not paid for overtime hours; *King v. FedCap,* 2022 WL 292914, at *5 (S.D.N.Y. Feb. 1, 2022) (granting conditional certification in time shaving case based on plaintiff's declaration attesting to conversations with other employees who suffered same violations; declaration from a former employee attesting to suffering same violations).

## VI.    LEGAL STANDARD

To protect Covered Employees' rights and interests, and to promote judicial economy and effective case management, the Court should approve the distribution of notice to all Covered Employees because the initial pleadings and preliminary evidence show that all Covered Employees are similarly situated. Based on the Complaint and the First Amended Complaint, Plaintiff's and Defendants' produced documents, and Plaintiff's Declaration in support of this motion, Plaintiff and Covered Employees worked as non-exempt employees, were similarly situated, and Defendants failed to pay wages, including overtime, due to a fixed salary. Plaintiff and Covered Employees were also subject to unpaid wages, including overtime, due to time shaving. Thus, they "together were victims of a common policy or plan that violated the law." *Cuzco v. Orion Builders, Inc*., 477, F. Supp. 2d 628, 633 (S.D.N.Y. 2007) (internal quotation omitted).

### A.    <u>THE COURT SHOULD CERTIFY THE COLLECTIVE ACTION AND ORDER NOTICE</u>

#### i.    The Standard for Conditional Certification and Notice Is Lenient

"Courts generally determine the appropriateness of class certification at two stages: first, on the initial motion for conditional class certification, and second, after discovery." *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 321 (S.D.N.Y. 2007). At the first stage, "courts utilize a lenient evidentiary standard in assessing whether the Plaintiff has presented sufficient

evidence to demonstrate that a prospective class of member plaintiffs is similarly situated to the named Plaintiff." *Anglada*, 2007 WL 1552511, at *11; *Mentor v. Imperial Parking Sys.*, 246 F.R.D. 178, 181 (S.D.N.Y. 2007). Under this lenient standard, a court will certify a class as a collective action and order notice to potential class members where "the plaintiff satisfies the minimal burden of showing that the similarly situated requirement is met" based on the pleadings and declarations. *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 367 (S.D.N.Y. 2007) (internal quotation omitted). Upon certification, "[p]otential class members are then notified and provided with the opportunity to opt in to the action." *Id.*

To prevail on a motion for conditional certification, plaintiffs need only make a "modest factual showing" that they "are similarly situated *with respect to their allegations that the law has been violated.*" *Hallissey v. Amer. Online, Inc.*, 2008 U.S. Dist. LEXIS 18387, at *6 (S.D.N.Y. Feb. 19, 2008) (internal quotation omitted; emphasis in original). Plaintiff must demonstrate that there is a "factual nexus between the [named plaintiff's] situation and the situation of other current and former [employees]." *Toure v. Cent. Parking Sys. of N.Y.*, 2007 U.S. Dist. LEXIS 74056, at *6 (S.D.N.Y. Sept. 28. 2007) (internal quotation omitted; alterations in original); *see also Mentor*, 246 F.R.D. at 181; *Fasanelli*, 516 F. Supp. 2d at 321. Plaintiff meets his burden where putative collective members "together were victims of a common policy or plan that violated the law[.]" *Lee v. ABC Carpet Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006) (internal quotation omitted), such as when they are all "employees of the same restaurant enterprise and allege the same types of FLSA violations." *Fasanelli*, 516 F. Supp. 2d at 322; *see also Toure*, 2007 U.S. Dist., LEXIS 74056, at *6 (stating that a plaintiff need only make a "modest factual showing" of similarity to satisfy the "relatively lenient evidentiary standard"); *Cuzco*, 477 F. Supp. 241 at 632-33 (plaintiff satisfied "minimal burden" by making "modest factual showing"); *Iglesias-Mendoza*, 239 F.R.D.

at 367-68 ("[P]laintiffs can satisfy the 'similarly situated' requirement by making a modest factual showing . . . that they and potential plaintiffs together were victims of a common policy or plan that violated the law.") (quoting *Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998)); *Mazur v. Olek Lejbzon & Co.*, 2005 WL 3240472, at *5 (S.D.N.Y. Nov. 29, 2005) (plaintiffs face only a very limited burden); *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) ("The burden on plaintiffs is not a stringent one, and the Court need only reach a preliminary determination that potential plaintiffs are "similarly situated."). "In the Second Circuit, courts routinely find employees similarly situated 'despite not occupying the same positions or performing the same job functions and in the same location, provided that they are subject to a common unlawful policy or practice." *King v. Fedcap,* 2022 WL 292914 at *7 (quoting *Balverde v. Lunella Ristorante, Inc.,* 2016 WL 2757430, at *4 (S.D.N.Y. May 11, 2016) (quoting *Guaman v. 5 M Corp.,* 2013 WL 5745905, at *4 (S.D.N.Y. Oct. 23, 2013)).

Allegations in the pleadings and declarations are sufficient to make this modest factual showing. *See, e.g.*, *Khalil*, 2007 U.S. Dist. LEXIS 70372, at *3 (certifying collective action based upon complaint and one affidavit); *Lixin Zhao*, 2001 WL 845000, at *2 (certifying based upon one affidavit founded on plaintiff's "best knowledge").

Unlike a Rule 23 class action, a § 216(b) collective action requires no "showing of numerosity, typicality, commonality and representativeness . . . as a pre-requisite to approval." *Mazur*, 2005 WL 3240472, at *4 (internal quotation omitted); *see also Masson v. Ecolab, Inc.*, 2005 U.S. Dist. LEXIS 18022, at *37 (S.D.N.Y. Aug. 17, 2005). The lenient standard for certification and notice under § 216(b) is justified because "[t]he ultimate determination regarding the merits of the case, and whether the class is properly situated – which requires a more 'stringent' inquiry – is made later in the litigation process, after more thorough discovery." *Gjurovich v.*

20

*Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 91, 105 (S.D.N.Y. 2003); *see also Dumitrescu v. Mr. Chow Enters., Ltd.*, 2008 U.S. Dist. LEXIS 49881, at *11 (S.D.N.Y. June 30, 2008) (noting that after discovery a court "review[s] the collective action certification more rigorously"). Plaintiff in this case has easily met the lenient standard for certification and notice.

### ii. The Underlying Merits of the Case are Immaterial to the Determination of Conditional Certification and Notice

Although Plaintiff is confident that he will successfully establish that Defendants failed to properly compensate himself and the Covered Employees under the FLSA, a discussion of the underlying merits is unnecessary and inappropriate at this time: "[T]he standard in this circuit is clear; the merits of plaintiffs' claim are not at issue in a motion for conditional certification." *Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 354 (E.D.N.Y. 2008); *see also, e.g.*, *Mentor*, 246 F.R.D. at 181 (stating that "the merits of a plaintiffs claims need not be evaluated and discovery need not be completed to approve and disseminate a § 216(b) notice"); *Fasanelli*, 516 F. Supp. 2d at 322 ("To the extent that Defendants['] opposition relies on a detailed factual dispute about whether the Defendants maintained an 'illegal off-the clock' policy, 'illegal tip retention' policy, or fail to pay the minimum wage, that inquiry is misplaced as those issues go to the merits of the case."); *Toure*, 2007 U.S. Dist. LEXIS 74056, at *6 (stating that at the conditional certification stage "the merits of a plaintiff's claims need not be evaluated"); *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) ("At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations."); *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) (finding that "[t]he focus . . . is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated'"); *Hoffmann*, 982 F. Supp. at 262 ("[T]he Court need not evaluate the merits of plaintiffs' claims in order to determine that, a

21

definable group of 'similarly situated' plaintiffs can exist here."). Any merits-based argument "is an improper ground on which to base a denial of a motion to certify conditionally an FLSA collective action[.]" *Anglada*, 2007 U.S. Dist. LEXIS 39105, at *20. Rather, the proper inquiry is merely "whether the putative class alleged by Plaintiff is similarly situated based on the pleadings and any affidavits," *Fasaneilli*, 516 F. Supp. 2d at 321.

### iii. Plaintiff Has Made the Modest Factual Showing Required for Conditional Certification

Here, Plaintiff has made far more than a modest factual showing that he and Covered Employees are similarly situated. Plaintiff's detailed allegations in the Complaint and First Amended Complaint, attachment of documents provided by Plaintiff and Defendants, and Declaration show that all Covered Employees were subject to the same compensation scheme. As such, if proven, these allegations establish that Defendants maintained illegal policies and practices that similarly affected all Covered Employees employed by Defendants.

### B. EARLY NOTICE TO 'SIMILARLY SITUATED' EMPLOYEES IS APPROPRIATE AND NECESSARY

Collective actions are favored under the law because they benefit the judicial system by enabling the "efficient resolution in one proceeding of common issues of law and fact" and provide employees with the opportunity to "lower individual costs to vindicate rights by the pooling of resources." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *Braunstein v E. Photographic Labs.*, 600 F.2d 335, 336 (2d Cir. 1978); *Fasanelli*, 516 F. Supp. 2d at 323. The alternative, a multitude of virtually identical individual suits, would burden courts unnecessarily and risk inconsistent judgments arising from the same events and brought under the same laws.

i.   **Sending Expedited Notice to "Similarly Situated" Employees Fulfills the FLSA's Broad Remedial Purposes**

Expedited notice is critical in FLSA actions. Unlike absent class members in a Rule 23 class action, potential class members in an FLSA collective action must affirmatively consent (or "opt-in") to be covered by the suit. 29 U.S.C. § 216(b). The statute of limitations continues to run on each individual's claim until he or she files a written consent form with the Court. 29 U.S.C. §§ 255, 256(b). To ensure that the rights protected by the FLSA do not grow stale through lack of knowledge, the Supreme Court has held that courts have broad authority to facilitate early notice of the existence of the lawsuit to potential opt in plaintiffs. *Hoffmann-La Roche*, 493 U.S. at 170. Notice to putative class members should be given as soon as possible since, because of the statute of limitations, "potential plaintiffs may be eliminated as each day goes by." *Foster v. Food Emporium*, 2000 U.S. Dist. LEXIS 6053, at *5 (S.D.N.Y. Apr. 26, 2000); *see also Cook v. United States*, 109 F.R.D. 81, 83 (E.D.N.Y. 1985) ("Certainly, it is unlikely that Congress, having created a procedure for representative action, would have wanted to prevent the class representative from notifying other members of the class that they had a champion.") (internal quotation marks and citation omitted). Thus, early distribution of a notice of pendency is crucial in an FLSA collective action.

The Court need not and should not delay the sending of notice until the completion of discovery. *Toure*, 2007 U.S. Dist. LEXIS 74056, at *8 (ordering notice under 29 U.S.C. § 216(b) where only limited discovery had taken place); *Iglesias-Mendoza*, 239 F.R.D. at 368 ("The court is not obliged to wait for the conclusion of discovery before it certifies the collective action and authorizes notice."); *Patton v. Thomson Corp.*, 364 F. Supp. 2d 263, 267-68 (E.D.N.Y. 2005) (ordering notice before full discovery in order to "facilitate[] the [FLSA]'s broad remedial purpose . . . promot[e] efficient case management . . . [and] preserve and effectuate the rights of potential

23

plaintiffs whose claims might otherwise become time-barred during the discovery phase of the case") (internal citations omitted); *Hoffmann*, 982 F. Supp. at 262 (ruling that the Court need not "wait for defendant to complete its discovery before authorizing class notice. To the contrary, courts have endorsed the sending of notice early in the proceeding, as a means of facilitating the FLSA's broad remedial purpose and promoting efficient case management"). In lieu of discovery, courts rely upon allegations in a complaint and employee declarations to determine whether plaintiffs and potential opt in collective members are similarly situated. *E.g.*, *Gjurovich*, 282 F. Supp. 2d at 104.

C.    **DISCOVERY OF NAMES, ADDRESSES AND TELEPHONE NUMBERS IS PROPER AND NECESSARY UNDER § 216(b)**

It is appropriate for courts in collective actions to order the discovery of names and contact information of potential collective members. *E.g., Lee*, 236 F.R.D. at 202; *Fasanelli*, 516 F. Supp. 2d at 323-24; *Cuzco*, 477 F Supp. 2d at 637; *Sherrill v. Sutherland Global Servs.*, 487 F. Supp. 2d 344, 350 (W.D.N.Y. 2007); *Patton*, 364 F. Supp. 2d at 268. "Courts within this Circuit routinely grant plaintiff's motion to compel production of the names and addresses of potentially similarly situated employees who may wish to 'opt-in' to a collective action." *Anglada*, 2007 U.S. Dist. LEXIS 39105, at *22.

Plaintiff therefore requests that, in addition to entering an order granting conditional certification and approving Plaintiff's proposed notice, the Court order Defendants to produce within ten days of its Order a list of all Covered Employees in Excel format who were employed by Defendants at any point in the six years prior to the entry of the Order with the following information: names, titles, compensation rates, date of employment, last known mailing addresses, email addresses, and all known telephone numbers.

24

### D.    THE PROPOSED NOTICE IS FAIR AND ADEQUATE

Attached hereto as **Exhibit A** is Plaintiff's proposed judicial notice. The proposed notice provides clear instructions on how to opt-in and accurately states the prohibition against retaliation or discrimination for participation in an FLSA action. The Supreme Court specifically left the "content details of a proposed notice under § 216(b) . . . to the broad discretion of the court." *Lee*, 236 F.R.D. at 202; *see also Gjurovich*, 282 F. Supp. 2d at 106. "When exercising its broad discretion to craft appropriate notices in individual cases, District Courts consider the overarching policies of the collective suit provisions" and ensure that putative plaintiffs receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Fasanelli*, 516 F. Supp. 2d at 323. The proposed notice achieves the goal of providing potential opt-ins with accurate and timely notice concerning the pendency of the collective action and should be adopted.

## VII.   EQUITABLE TOLLING

In ruling on the instant motion, Plaintiff respectfully requests that the applicable FLSA statute of limitations not be tolled until such time that Plaintiff is able to send notice to potential opt-in plaintiffs. District Courts in this and other Circuits have increasingly granted a plaintiff's request for equitable tolling to avoid the prejudice to actual or potential opt-in plaintiffs that can arise from the unique procedural posture of these types of cases. *See, e.g.*, *Ramos v. DNC Food Serv. Corp.*, 2020 U.S. Dist. LEXIS 96123, *29 (S.D.N.Y. June 1, 2020) (finding that "[b]ecause [the certification] motion has been pending for several months . . . equitable tolling through at least until the date of this Opinion & Order is appropriate, and may be appropriate through the date of issuance of the Notice"). Additionally, Defendants' refusal to produce Court Ordered discovery and fabrications to Plaintiff and the Court make tolling particularly appropriate in this matter.

25

## VIII.  CONCLUSION

Based on testimonial support and documentary evidence, there is no doubt that there is at least an **<u>inference</u>** of similarly situated prospective claimants whose rights were affected by Defendants' common practice of requiring Covered Employees to work off-the-clock, which if proven true, violates the FLSA. *See Khamsiri*, 2012 U.S. Dist. LEXIS 76660, at *3 n.1 (granting conditional certification when there are "***sufficient indicia of the possibility*** *of a common policy or plan.*") (emphasis added). As their rights grow staler by the day, this Court is the only recourse that prospective claimants have against Defendants' misconduct. For the foregoing reasons, Plaintiff respectfully requests that the Court approve this motion in entirety.

Dated: New York, New York                        Respectfully submitted,
     May 1, 2024                        By:   */s/ C.K. Lee*_____
                                     C.K. Lee, Esq. (CL 4086)

                                     **LEE LITIGATION GROUP, PLLC**
                                     148 West 24th Street, 8th Floor
                                     New York, NY 10011
                                     Tel: (212) 465-1188
                                     Fax: (212) 465-1181
                                     *Attorneys for Plaintiff,*
                                     *FLSA Collective Plaintiffs,*
                                     *and the Class*