**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

                                    Case No.: 22-cv-10403

RAFAEL DE LA CRUZ, on behalf of himself,
FLSA Collective Plaintiffs and the Class,

                       Plaintiffs,

       v.

BROADWAY FOOD MART INC.,
d/b/a DOLLAR JUNCTION,
SUTTER DOLLAR DISCOUNT INC.
d/b/a SUTTER DOLLAR DISCOUNT,
JOHN DOE CORPORATIONS 1-100,
and BASIT H. MOTIWALA.,

                     Defendants.

-------------------------------------------------------------X

---

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION, COURT-AUTHORIZED NOTICE TO SIMILARLY SITUATED INDIVIDUALS AND DISCLOSURE OF CONTACT INFORMATION FOR NOTICE TO POTENTIAL OPT-INS**

---

William X. Zou, Esq.
BILL ZOU & ASSOCIATES PLLC
Attorney for Defendants
136-20 38th Avenue, Suite 10D
Flushing, NY 11354
(718) 661-9562

## **TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ..................................................................... 1

**ARGUMENTS** ................................................................................................ 2

   I.    NO ADVERSE INFERENCE SHOULD BE IMPLEMENTED IN FAVOR OF CERTIFICATION OF A CONDITIONAL COLLECTIVE........................................... 2

   II.   PLAINTIFF'S FLSA COLLECTIVE ACTION CLAIMS LACK OF GROUND 7

     A.   DEFENDANTS HAVE PAIED OVERTIME SALARY................................... 8

     B.   DEFENDANTS NEVER FAILED TO PAY WAGES, INCLUDING OVERTIME. ............................................................................................ 9

   III.   DEFENDANTS ARE NOT OPERATING AS A SINGLE INTEGRATED ENTERPRISE ................................................................................................ 9

     A.   RELATED ACTIVITIES ............................................................... 11

     B.   COMMON CONTROL ................................................................ 13

     C.   COMMON BUSINESS PURPOSE................................................... 14

   IV.   PLAINTIFF HAVE FAILED TO DEMONSTRATE A REASONABLE BASIS FOR THEIR CLAIM THAT THERE ARE OTHER SIMILARLY SITUATED EMPLOYEES.................................................................................................. 15

   V.   PLAINTIFF HAVE FAILED TO MEET THE BURDEN OF PROOF FOR CONDITIONAL CERTIFICATION ............................................................... 17

   VI.   PLAINTIFF HAVE FAILED TO DEMONSTRATE THAT THERE WERE OTHER EMPLOYEES DESIRING TO OPT IN.......................................................... 19

   VII.   NO EQUITABLE TOLLING SHOULD BE GRANTED............................... 20

**CONCLUSION** .............................................................................................. 21

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Apolinar v. R.J. 49 REST., LLC*, 2016 WL 2903278, United States District Court, S.D. New York…………………………………………………………………………..12,13

*Ashcroft v. Iqbal* 129 S.Ct. 1937, Supreme Court of the United States ........................... 11

*Bateman v. Permanent Mission of Chad*, 18-CV-00416 (PMH) (S.D.N.Y. Mar. 15, 2021)…………………………………………………………………………………………3

*Cannon v. Douglas Elliman, LLC et al* 2007 WL 4358456, United States District Court,

S.D. New York.............................................................................................................. 11

*Cohen v. Allied Steel Buildings, Inc.*, 554 F.Supp. 2d 1331, (S.D. Fla. 2008) (*quoting White v. Osmose, Inc.,* 204 F. Supp. 2d 1309, 1314 (M.D. Ala. 2002))……………………………………………………………………………15,16

*Hibbs-Rines v. Seagate Techs., L.L.C.,* 2009 WL 513496,  United States District Court,

N.D. California............................................................................................................. 11

*HUER HUANG, et al., v. SHANGHAI CITY CORP., et al.,* 459 F.Supp.3d 580, United

States District Court, S.D. New York.......................................................................... 12

*Ikikhueme v. Culin Art, Inc.,* No. 13 Civ 293 (JMF), 2013 WL 2395020, at 2-3 (S.D.N.Y. June 3, 2013)……………………………………………………………………………..17

*Lopez v. Acme American Environmental Co., Inc*., 2012 WL 6062501, United States District Court, S.D. New York.,……………………………………….....................................13,14

*Morales v. Plantworks, Inc.,*No. 05 civ 2349 (DC), 2006 WL 278154, (February 2, 2006)…………………………………………………………………………………..17

*Morgan v. Family Dollar Stores, Inc.,* 551 F.3d 1233 (11th Cir.2008)………………….15

*Myers v. Hertz Corp*., 624 F.3d 537 (2n Cir. 2010)………………………………………...17

*Outley v. City of New York*, 837 F.2d 587, 591 (2d Cir. 1988)……………………………3

*Patel v. Wargo*, 803 F.2d 632, 635-36 (11th Cir.1986)…………………………………11

*Pelgrift v. 355 W. 51st Tavern Inc.,* No. 14-CV-8934, 2016 WL 817470, at 2 (S.D.N.Y. Feb. 23, 2016)…………………………………………………………………………..3

*Romero v. H.B. Auto Group Inc.,* No. 11 civ. 386 (CM), 2012 WL1514810, (S.D.N.Y., May 1, 2012)…………………………………………………………………………..17

*Sanchez v. JMP Ventures, LLC,* No. 13 Civ. 7264 (KBF) (S.D.N.Y. January 27, 2014)..18

*Sandate v. Makotek, LLC,* 2006 WL 4792782, at * 3 (M.D. Fla. Sep. 28, 2006) (citation omitted)……………………………………………………………………………………..19

*Wolman v. Catholic Health System of Long Island*, 853 F. Supp. 2d 290 Dist. Court, ED New York 2012…………………………………………………………………………..11

## PRELIMINARY STATEMENT

Defendants by and through their undersigned counsel, hereby respectfully submit this Memorandum of Law in opposition to the Plaintiffs' instant Motion for Conditional Collective Certification.

By his instant motion, Plaintiff seeks: (1) granting collective action status, under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b); (2) early notice 'similarly situated' employees; (3) discovery of names and contact information of potential collective members; (4) ordering that the applicable FLSA statute of limitation is not be tolled until such time that Plaintiff is able to send notice to potential opt-in plaintiffs.

The Plaintiff's instant motion must be denied in its entirety because he has failed to meet his burden of proof for conditional certification of a collective action under the FLSA, have failed to demonstrate a reasonable basis that there are similarly situated employees, have failed to demonstrate factually that there is a common policy or plan that violated the law and have failed to allege that there are similarly situated non-exempt employees desiring to opt in the putative class.

Plaintiff's motion to implement an adverse inference in favor of certification of a conditional collective is also woefully insufficient. On March 16, 2023, Plaintiff wrote to the Court and Defendants claiming that: (1) the wage notice produced by Defendant was fabricated as the wage notice form's date of issue was three months after the date it was supposedly signed by Plaintiff, and (2) Defendant forced Plaintiff to sign an affidavit that states that Plaintiff's start of employment was on June 1, 2022.

However, up to this date, the Plaintiff has failed to furnish any proof or formal attestation in admissible form to substantiate the allegation that the wage notice was

fabricated by the Defendants. To the contrary, the wage notice was provided by the Plaintiff. *See* **Exhibit B**, the Deposition Transcript of Basit H. Motiwala, and **Exhibit C**, the Deposition Transcript of Djidirirou Sall.

Contrary to the accusations of Plaintiff, Defendants vehemently denied fabricating any evidence, it is still the Defendant's position that the Defendant did not fabricate the wage notice, it was prepared, signed and dated by the Plaintiff himself; that the Plaintiff's Affidavit dated March 7, 2023 was signed voluntarily, not coerced; that Defendant did not withhold records, or conceal witnesses; all putative class member were produced.

Plaintiff's showing is not sufficient to warrant conditional collective certification without an adverse inference. Plaintiff did not meet the lenient standard for conditional collective certification.

## ARGUMENTS

### I.    NO ADVERSE INFERENCE SHOULD BE IMPLEMENTED IN FAVOR OF CERTIFICATION OF A CONDITIONAL COLLECTIVE

Plaintiff requests implementing an adverse inference in favor of certification of a conditional collective based upon conclusory allegation that the Defendants fabricated evidence, withheld documents and information, or lied about the number of business owned by the Defendants.

However, the Plaintiff has failed to prove any of his allegations.

Firstly, the Plaintiff already has already filed a motion for sanctions based upon the same allegations (Docs. 81-83), Defendants denied such allegations and opposed such motion for sanction (Docs. 89-90). Such motion is pending before this court. It is redundant for the Plaintiff to repeat such allegations in this motion. Moreover, the Plaintiff did not

seek Court's permission before seeking such type of sanctions relief in this motion, it should not be considered by this Court.

In the event the Court inclines to consider, which it should not, it should note the following:

On January 24, 2023, the Court referred the case to mediation and ordered discovery. [Dkt. No.18]. Pursuant to such Order, Defendants produced wage records evincing that Plaintiff started employment with Defendants on June 1, 2022, as opposed to June 2017, the date that Plaintiff claims that he started working for Defendants. Besides, Plaintiff's Affidavit, *See* **Exhibit A**, also confirmed that the Plaintiff commenced employment with the Defendants on June 1, 2022.

**First**, Plaintiff alleged that the wage notice produced by Defendants was clearly fabricated. However, to date, they have failed to furnish proof or formal attestation in admissible form to substantiate such assertion. In fact, pursuant to the deposition transcript, the wage notice was provided by the Plaintiff, not the Defendants, *See* **Exhibit B**, the Deposition Transcript of BASIT H. MOTIWALA, and **Exhibit C**, the Deposition Transcript of DJIDIRIROU SALL.

The Plaintiff is a competent adult with full legal capacity and independent judgment, it is unlikely that he could be coerced. The Defendants denied that they ever threatened or coerced the Plaintiff into anything. After Plaintiff applied for employment with the Defendants, he provided the wage notice to Defendants by himself.

Plaintiff argued that the NY DOL's response to his FOIL request proves that the wage notice was not available until after August 2022. Firstly, such FOIL response is hearsay, not admissible as evidence. Secondly, such FOIL response does not support the

contentions made by the Plaintiff, it did not state that LS55S (09/22) was not available until after August 2022, it merely says "Please log in to the FOIL Records Access Center at the following link to retrieve the responsible records". There is no information about who retrieved the records and what records were retrieved.

Moreover, it was testified by Mr. Motiwala and the Store Manager, Mr. Djidirirou Sall that such wage notice was signed and dated by the Plaintiff and provided to the Defendants by the Plaintiff.

It is noted that now Plaintiff has changed his contentions. In the past, he has contended such wage notice bearing the notes of LS55S(09/22) was not available until September 2022.

Two, Plaintiff or his counsel are not expert on Wayback Machine, their opinion or reading are not admissible.

Three, Plaintiff's reliance on an alleged legal article found on JDSUPRA notes is also misplaced as such legal article is not admissible. Plaintiff further failed to provide any basis for its authority.

**<u>Second</u>**, Defendants have produced all records covering the entire period of employment of the Plaintiff. Plaintiff inappropriately relied upon Defendants' first Response to Plaintiff's Interrogatories which was subsequently amended. *See* **Exhibit E**, Defendant's Amended Response to Plaintiff's First Set of Interrogatories. The punch cards all looked the same. At the first time when Defendants responded to Plaintiff's Interrogatories, Defendants thought the punch cards were generated from the Defendants' clocking machine, however after careful reading the time entries of the punch cards which are quite illegible, Defendants realized that they were not from their store. *See*, Transcript

of Mr. Motiwala's testimony, 216:2 to 219:24, **Exhibit B**. Accordingly Defendants amended their response to the Interrogatories on September 22, 2023, stating that: (1) Defendants are not expert in punch cards, clock machine or timesheet, therefore, do not possess the knowledge or information to confirm if the punch-records provided by the Plaintiff were created using Defendants' clock-machine; and (2) the punch-records provided by the Plaintiff were produced by himself, they are not punch cards related to the Plaintiff's employment with the Defendants. *See* **Exhibit E**, Defendant's Amended Response to Plaintiff's First Set of Interrogatories, Plaintiff did not object or reject such Amended Response, instead, he dwelled on the first Response and refused to consider the Amended Response.

**Third**, Defendants did not withhold any business locations. Even in the Defendants' Answer, the Defendants admitted that Mr. Motiwala was the owner of three existing stores. See, Dkt No. 17, ¶8, Defendants' Answer. As recent as February 28, 2024, Defendants provided comprehensive explanations for three locations of existing business. The fourth one, Sutter Dollar Discount Inc. was closed over four (4) years ago, Plaintiff never worked there, nor did he have privity with it, accordingly Defendants objected to it. (Dkt No. 80).

Plaintiff has failed to prove that the Defendants withheld any other business locations. Plaintiff relied upon Mr. Motiwala's phone number is listed as the contact number for other stores throughout the City, however, such an allegation is purely speculation and not admissible, it was denied by Mr. Motiwala in his deposition as well.

**Fourth**, Defendants did not conceal any witnesses. Defendant Mr. Motiwala is an absentee owner, his Store Manager, Mr. Sall was managing the store where Plaintiff worked. In response to Court Orders and Plaintiff's requests, Mr. Motiwala relied upon its

Store Manager, Mr. Sall to provide information and documents. Some of the information was not accurate at the first instance, but subsequently, it was all corrected. Up to this date, the Plaintiff did not produce any evidence to prove that Defendants concealed which witness. By contrast, the Plaintiff should have the ability to identify his co-workers and witness, however, as of this date, the Plaintiff has not identified any witness, nor did potential class members opt in this proceeding.

Contrary to Plaintiff's contentions, Mr. Sall testified that the alleged employee ID numbers are "not equivalent to 'ID Number', I have nothing that says 'ID'. It's like an artifact. It's not really – I don't have any document this number", "there are no ID numbers. They have nothing to do with 'ID'", "I have never given ID number. I have never given any ID number to any of the workers". See, 79:19 to 80:21, Exhibit H to the moving papers. Mr. Sall simply said he did not give out ID numbers, the numbers alleged to be ID numbers by the Plaintiff's counsel was not true.

As for independent accounting firm, the Defendants has explained in such letter,

"in response to the Court ordered disclosure of the accounting firm responsible for assigning Employee ID numbers, the Defendants explained to me that it was actually the Defendant's Manager, Djibirirou Sall, who assigned the Employee ID numbers, not an outside accounting firm, that Mr. Basit H. Motiwala is an absentee owner, the Manager, Mr. Sall, was in full charge of the Defendant's business wherein the Plaintiff worked and works presently, including but not limited to, hiring, firing and payroll records. As the main contact person with my office, Mr. Motiwala's information and responses to Plaintiff's discovery demands and interrogatories all came from and relied upon information and documents provided by Mr. Sall. Mr. Motiwala further explained that Mr. Sall's native language is French, not English, there are communication difficulties between them."

The Defendants have produced complete and true class lists. Mr. Motiwala is an absentee owner, the Manager, Mr. Sall, was in full charge of the Defendants' business

wherein the Plaintiff worked, including but not limited to, hiring, firing and payroll records. Defendants solely relied upon information and documents provided by their Store Manager.

Contrary to Plaintiff's assertion that Defendants did not provide employee lists for "the Sutter Discount or Blake Food Mart locations despite of the August 17, 2023 Court Order" (page 8, Plaintiff's Memo), Defendants did provide respectively on March 11 and April 12, 2024. See, **Exhibit F** for a copy of the Employee List for Blake Food Mart location with a transmittal email, **Exhibit G** for a copy of the Employee List for Sutter Discount location with a transmittal email.

Defendants have diligently fulfilled their discovery obligations by ultimately submitting the necessary documents, thereby demonstrating good faith and full compliance with the court orders and their obligations. The Defendants did not intentionally violate any court orders. Defendants always acted in good faith, complied with the court's order in a timely manner even though there were minor deviations or delay which were all cured. No adverse inference should be implemented against Defendants.

## II.    PLAINTIFF'S FLSA COLLECTIVE ACTION CLAIMS LACK OF GROUND

Plaintiff has been working for Broadway Food Mart Inc. ("Broadway Food Mart") as a stocker since June 1, 2022. The Plaintiff has been paid hourly basis per pay week during his employment. Plaintiff's own affidavit, *See* **Exhibit A**, has confirmed this fact.

Plaintiff is not entitled to conditional collective certification because Defendants did not violate the FLSA. **<u>First</u>**, Plaintiff admitted that he was paid based upon hourly basis per pay week. His hourly regular pay rate is $15.00 & the overtime rate is $22.50. If he worked within forty hours in a workweek, the employee will be paid at a regular hourly

rate. If he worked more than forty hours in a workweek, he was paid for his overtime at an overtime hourly rate, *See* **Exhibit D**, Broadway Food Mart Payroll.

**Second**, other than conclusory allegations of the Plaintiff, the Plaintiff has failed to show, let alone prove, that Defendants required alleged Cover Employees to perform job duties off-the-clock and without compensation that are more than *de minimis*.

## A. DEFENDANTS PAID OVERTIME SALARY

Plaintiff's employment with Defendants started on June 1, 2022. Plaintiff heavily relied upon his **Exhibit I** (Plaintiff's Time and Pay Records), however, such alleged Plaintiff's Time and Pay Records consisting of few pages of computerized ledger and three (3) copies of time cards were never disclosed before, they should not be considered by this Court. It does not bear any bates stamp, they were never produced by either Plaintiff or Defendants in the discovery proceeding.

Moreover, Plaintiff's reliance upon such Exhibit I is also misplaced, it simply does not state what he contended.

> Plaintiff claims that from October 7, 2019, to October 11, 201, he was paid $460.00, however, Exhibit I does not show that.

As Defendants maintain the position that Plaintiff did not commence employment until June 1, 2022, these Plaintiff's Time and Pay Records are apparently not with Defendants' employment.

As discussed above, the Time Cards all looked like the same. At the first time when Defendants responded to Plaintiff's Interrogatories, Defendants thought the punch cards were generated from the Defendants' clocking machine, however after careful reading the time entries of the punch cards which are quite illegible, Defendants realized that they were

8

not from their store. *See*, Transcript of Mr. Motiwala's testimony, 216:2 to 219:24, **Exhibit B**. Accordingly Defendants amended their response to the Interrogatories on September 22, 2023, stating that: (1) Defendants are not expert in punch cards, clock machine or timesheet, therefore, do not possess the knowledge or information to confirm if the punch-records provided by the Plaintiff were created using Defendants' clock-machine; and (2) the punch-records provided by the Plaintiff were produced by himself, they are not punch cards related to the Plaintiff's employment with the Defendants. *See* **Exhibit E**, Defendants' Amended Response to Plaintiff's First Set of Interrogatories. Plaintiff did not object or reject such Amended Response, instead, he dwelled on the first Response and refused to consider the Amended Response.

**B. <u>DEFENDANTS PAID WAGES, INCLUDING OVERTIME.</u>**

Plaintiff started to work for Broadway Food Mart Inc. ("Broadway Food Mart") as a stockkeeper since June 1, 2022. The Plaintiff has been paid hourly basis per pay week upon the employment. Plaintiff's affidavit, *See* **Exhibit A**, has confirmed such fact.

From January 21, 2019, to January 26, 2019, Plaintiff is not Defendants' employee. Exhibit I is obviously not the Time and Pay records of Plaintiff with the Defendants. If we peruse the Exhibit I provided by Plaintiff, the deducted approximately thirty (30) minutes from daily hours each day of the table, has been clearly shown as "lunch" time, not so-called "time shaving". Plaintiff conclusively alleges that he was required to work through the 30 minutes lunch break, such allegation is not only self-serving and conclusory, but lack any specific particulars.

**III.    DEFENDANTS ARE NOT OPERATING AS A SINGLE INTEGRATED ENTERPRISE**

"Plaintiffs' assertions that Defendants are an 'integrated enterprise' (FAC ¶ 25), 'have common ownership' (FAC ¶ 33) and are 'engage[d] in a joint venture' (FAC ¶ 39) are similarly insufficient. *See Cannon v. Douglas Elliman, LLC et al* 2007 WL 4358456, United States District Court, S.D. New York("[P]leading a joint venture does not trigger joint employer status because it is possible for joint ventures to separately employ different people...."); *See Hibbs-Rines v. Seagate Techs., L.L.C.,* 2009 WL 513496, United States District Court, N.D. California("Plaintiff' joint employer allegations are insufficient because they are legal conclusions, not factual allegations,.... While plaintiff is not required to conclusively establish that defendants were her joint employers at the pleading stage, plaintiff must at least allege some facts in support of this legal conclusion.") *cf. Patel v. Wargo*, 803 F.2d 632, 635-36 (11th Cir.1986) (holding that the finding that entities constitute a single "enterprise" under 29 U.S.C. § 203(r) is separate and distinct from whether an entity is an "employer" under 29 U.S.C. § 203(d))." *See Wolman v. Catholic Health System of Long Island*, 853 F. Supp. 2d 290 Dist. Court, ED New York 2012.

"Plaintiffs fail to plead sufficient factual content that the Chinatown Defendants meet this definition of employer as to Plaintiffs to cross "the line between possibility and plausibility of entitlement to relief." *See Ashcroft v. Iqbal* 129 S.Ct. 1937, Supreme Court of the United States. Plaintiffs rely on the following allegations to support their claim that the Chinatown location operated as a single integrated enterprise with the Midtown location such that the employees of the latter should be considered employees of the former and that the Chinatown location can be held liable for the violations of the FLSA and NYLL alleged by the employees of the Midtown location: (a) Joe's Shanghai shares a single website which lists the three restaurants, their locations, and their menus and says,

"Our company so far ONLY has three branches in New York," FAC ¶ 73; (b) Si is a 50% shareholder of both the Midtown and Chinatown locations, FAC ¶ 48; (c) Si "opened each of the three Joe Shanghai locations of the Joe Shanghai 'Company,' " FAC ¶ 74; (d) Si "(1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at [each of the locations]," FAC ¶ 48; and (e) "Joe's Shanghai transferred employees, including Plaintiffs, between locations," FAC ¶ 75. Those allegations together or alone are insufficient to make any Chinatown Defendant a manager of employees at the Midtown location." *See HUER HUANG, et al., v. SHANGHAI CITY CORP., et al.,* 459 F.Supp.3d 580, United States District Court, S.D. New York.

Here in this case, Plaintiff presented a three-factors test similar as factors mentioned in the cases above to classify Defendants as a single integrated enterprise, but all these three factors failed to prove Defendants operate as a single integrated enterprise.

### A.  <u>RELATED ACTIVITIES</u>

"[T]he court held that the description of the business conducted by a group of related corporate entities as "a family owned and operated New York Gourmet Delicatessen" was insufficient to make the entities a single integrated enterprise for purposes of the FLSA and NYLL." *See Apolinar v. R.J. 49 REST., LLC*, 2016 WL 2903278, (U.S. District Court, S.D. N.Y.)

Contrary to Plaintiff's contentions, each and every of the four stores owned by Mr. Motiwala are or were independently operated by its store manager, each store has a different store manager, each store is under the control and management of each store manager, employees were hired separately, each store's business activities were

independently of each other, not necessary to the operation and maintenance of other store, there is no proof that they share same warehousing, bookkeeping, or advertising, there is no evidence to show that there are "mutually supportive services to the substantial advantage of each entity" other than conclusory allegation made by the Plaintiff that he or other alleged Covered Employees were transferred among stores.

Plaintiff relied upon a self-serving conclusory Declaration of the Plaintiff containing boilerplate and formulaic allegations, however, as admitted by him, he worked as a stocker, it is impossible for him to acquire the knowledge that "(f)rom my experience and understanding, Corporate Defendants are operated as a single business under the common control of Individual Defendant", that "Corporate Defendant discount stores operate exclusively in New York State", that "Although Defendants' Companies have different names, they effectively operate as one single company, under the common control of the Individual Defendant".

Contrary to his formulaic allegation that "Defendants have one streamlined practice for interviewing and hiring employees, e.g., once an employee is hired by any of Defendants' Companies, he or she is thereafter employed by all of Defendant's Companies". As testified by Mr. Motiwala, each store has its own store manager, each store manager has the power of firing and hiring. There is no evidence showing that the Defendants have a streamlined employment practice.

Contrary to his formulaic allegation that he observed supplies being exchanged between the Stores on an as needed basis. How could he possible observed supplies being exchanged between four stores?

He further alleged that the Stores shared executive management, phone number and assistance lines, that Defendants purchased and negotiated prices of merchandise and inventory in bulk, and supplied the Stores on an as needed basis, but failed to provide any proof.

He failed to provide any showing that "mutually supportive services to the substantial advantage of each entity", therefore failed to show the first prong.

### B. COMMON CONTROL

The *Apolinar* plaintiffs alleged that the family members were in charge of all areas of the Toasties deli enterprise including the hiring and termination of workers, wage determinations, work schedules, type of work assigned, designated workload, and employment policy. The court nonetheless held that those allegations were insufficient to establish that the separate corporations had "an interrelation of operations or centralized control of labor relations with plaintiffs' identified direct corporate employer" sufficient to hold each of them liable under the FLSA. *See Apolinar v. R.J. 49 REST., LLC*, 2016 WL 2903278, United States District Court, S.D. New York.

In *Lopez v. Acme American Environmental Co., Inc*., 2012 WL 6062501, United States District Court, S.D. New York., the four corporations shared a supply room and cleaning chemicals and had a common bookkeeper, accountant, and general manager. *Id*. The companies also had the same owners, who shared offices at the location of the Acme Group, and who Acme Environmental employees called the "Boss" and "Big Boss." *Id*. One of those owners hired three Acme Environmental employees but did not hire any of the plaintiffs. *Id*. The court held the allegations insufficient to establish that the four companies operated as an integrated enterprise. "Allegations of common ownership

and common purpose, without more, do not answer the fundamental question of whether each corporate controlled Plaintiffs as employees." *Id*.

Here in this case at bar, there is no shred of showing that the separate corporations had "an interrelation of operations or centralized control of labor relations with Plaintiff's identified direct corporate employer", conclusory allegation of common ownership and common purpose, without more, do not answer the fundamental question of whether each corporate controlled Plaintiff and the alleged Covered Employees as employees.

As testified by Mr. Motiwala, each store is managed by its own store manager in charge of hiring and firing of each store's employees, there is no collective management of employees, Plaintiff failed to make any showing of such other than formulaic allegations, Plaintiff failed to satisfy the second prong.

## C. <u>COMMON BUSINESS PURPOSE</u>

Plaintiff again has failed to satisfy this third prong of the test. He has failed to demonstrate that Defendants collectively operate the Companies and managed all employees who worked at the Stores.

Contrary to his conclusory allegations, each store has its own employment hiring and firing, there is no collective management of employee or collective management of the Stores' business.

All the Plaintiff demonstrated is a common ownership, however, "(a)llegations of common ownership and common purpose, without more, do not answer the fundamental question of whether each corporate controlled Plaintiffs as employees." *See Lopez*.

## IV.   PLAINTIFF HAVE FAILED TO DEMONSTRATE A REASONABLE BASIS FOR THEIR CLAIM THAT THERE ARE OTHER SIMILARLY SITUATED EMPLOYEES

To obtain conditional collective certification, a plaintiff must demonstrate that there is a "reasonable basis" for his claim that there is other similarly situated employees. *Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233 (11ᵗʰ Cir. 2008).* In order to satisfy this burden, "(a) plaintiff must make some rudimentary showing of commonality between the basis for his claims and that of the potential claims of the proposed class, beyond the mere facts of job duties and pay provisions. Without such a requirement, it is doubtful that §216(b) would further the interests of judicial economy, and it would undoubtedly present a ready opportunity for abuse." *Cohen v. Allied Steel Buildings, Inc.*, 554 F.Supp. 2d 1331, (S.D. Fla. 2008) (*quoting White v. Osmose, Inc.,* 204 F. Supp. 2d 1309, 1314 (M.D. Ala. 2002)).

Here, the Plaintiff has failed to demonstrate that there is other similarly situated employee and that there is commonality between the basis of his claims and that of the potential claims of the proposed class. The Plaintiff alleged that he is a stocker, but failed to allege there are other employees worked as stocker as him, failed to allege there were other workers "similarly situated", did not alleged there other "similarly situated" employees holding similar positions, did not describe any positions, job duties, job pay, working hours of any other co-workers.

In <u>Cohen</u>, the plaintiffs submitted two declarations asserting that time records were not kept and that employees were not paid overtime wages, the court held that "(t)hese conclusory statements do not rise to the level contemplated" by settled authority. The court

also noted that "the allegations are sparse and limited to their knowledge of Defendants' operations" and did not even provide a job description.

Here in this case, the Plaintiff did not even reach the level of the plaintiffs at <u>Cohen</u>, the Plaintiff here did not submit any affidavit from other stockers, did not even allege other stockers had knowledge of the Defendants' operations. Similar to <u>Cohen</u>, his allegations are limited to his generalized knowledge, and did not rise to the level to warrant conditional certification. It is evidently clear that the Plaintiff is not aware of a single non-exempt coworker who claims to be a victim of a common practice or policy in violation of the law.

The Affidavit signed by the Plaintiff in the presence of a notary public is very clear: the commencement of the employment relationship between the Plaintiff and the Defendants was June 1, 2022. Plaintiff could not possible know what happened in Defendants' Stores before June 1, 2022.

Reviewing paragraphs 14-17 of the declaration of the Plaintiff, one can only conclude such conclusory and unsupported allegations are insufficient to support there are other similarly situated employees. The Plaintiffs did not provide any detail as to a single conversation or knowledge, did not provide when or where they "discuss" with whom, the positions of such persons with whom they discussed, the time periods of employment of such persons with whom any conversation occurred, the basis of his such knowledge, the sources of such knowledge, the facts substantiating such knowledge, how did the Plaintiff know the working hours of his coworkers or how much they were paid… All these critical detail facts were left out except a boilerplate generalized allegation mirrored in the Declaration.

Based upon the foregoing, the Plaintiff's motion is utterly devoid of any modest factual showing that there were similarly situated victims, that there was a common practice or policy in violation of law.

## V.    PLAINTIFF HAVE FAILED TO MEET THE BURDEN OF PROOF FOR CONDITIONAL CERTIFICATION

Certification of a "collective action" is a two-step process in the Second Circuit. *Myers v. Hertz Corp*., 624 F.3d 537 (2n Cir. 2010). At the first step, Plaintiffs bear the light burden of making a "modest factual showing" that the named initial plaintiffs and the potential opt-in plaintiffs together were victims of a common policy or plan that violated the law. *See, Myers.*

While a Plaintiff's burden of proof is low, it is not non-existent, certification is not automatic. *Romero v. H.B. Auto Group Inc.,* No. 11 civ. 386 (CM), 2012 WL1514810, (S.D.N.Y., May 1, 2012). Even at the conditional certification stage, a plaintiff's burden under § 216(b) "cannot be satisfied simply by unsupported assertions," *Myers, 624 F. 3d at 555,* or with "conclusory allegations". *Morales v. Plantworks, Inc.,* No. 05 civ 2349 (DC), 2006 WL 278154, (February 2, 2006).

Unsupported assertions and conclusory allegations are insufficient to conditionally certify a class under § 216(b) in this District. *Ikikhueme v. Culin Art, Inc.,* No. 13 Civ. 293 (JMF), 2013 WL 2395020, at 2-3 (S.D.N.Y. June 3, 2013) (denying conditional certification when Plaintiff offered only a single declaration from himself and otherwise relied on "unsupported assertions").

This case is analogous to *Sanchez v. JMP Ventures, LLC,* No. 13 Civ. 7264 (KBF) (S.D.N.Y. January 27, 2014) wherein the Court denied conditional certification

because the allegations were merely conclusory and unsupported. In *Sanchez*, the Plaintiff allegations were based on his "observations" and "conversations" with other employees (whose first names listed), the Court held that the Plaintiff did not provide any detail as to a single observation or conversation, did not provide where or when these observations or conversations occurred, which is critical in order for the Court to determine the appropriate scope of the proposed class and notice process.

Here, the Plaintiff conclusory relied upon his purported "discussed with coworkers", did not disclose any details he alleged had conversations with as in *Sanchez*. He did not disclose the basis of his "knowledge" either, whether such "knowledge" is based upon his observation as in *Sanchez*, which is not sufficient, or hearsay statements, which are even worse and not admissible as evidence, remains to be insufficient to support conditional certification.

More troubling is that as the Plaintiff does not speak read or write English, yet his Declaration was written in English, there is no certified translation of English into Spanish, there is no declaration from any translator that he or she translated the contents of the Declaration to the Plaintiff, such Declaration should be disregarded by the Court.

More challenging to the Defendants in this case is that the Plaintiff has been refusing and obstructing deposition of him. As the records show, Plaintiff was noticed to be deposed since August 2023, but has refused to appear for deposition multiple times, when he finally appeared for deposition, he interrupted his deposition without good cause or justification, now the Defendants had to defend this motion without the benefit of deposing him as to his knowledge on collective management of business or employees, or existence of other similarly situated employees. Currently, Plaintiff has been finally

scheduled for deposition on June 13, 2024. It is prejudicial to the Defendants to defend this instant motion without the chance to depose him first.

In Plaintiff's proposed Notice of Pendency of FLSA Lawsuit, the Plaintiff request the court facilitated notice to be sent to a large group of former or current non-exempt employees from December 8, 2016, to present. However, many of such defined classes are not "similarly situated" as the Plaintiff. Plaintiff admitted that he worked as a stocker, only a class of stocker should be certified if the Cour inclines to grant which it should not.

Moreover, Plaintiff cannot fairly represent the proposed putative class. The Plaintiff worked for short periods from June 1, 2022, to February 23, 2023, yet the Plaintiff seek to represent "ALL former or current non-exempt employees from December 8, 2016, to present (six years prior to the filling of the complaint)" for conditional certification. Apparently, he has no commonality or nexus with those non-exempt employees from December 8, 2016. If the Court grants conditional certification, which it should not, the collective class should be limited to from June 1, 2022, to the commencement of this action.

In summary, the Plaintiff's Complaints are utterly devoid of any modest factual showing that there were similarly situated victims, that there was a common practice or policy in violation of law. Plaintiff has failed to overcome even the most lenient standard for conditional certification.

## VI.    PLAINTIFF HAVE FAILED TO DEMONSTRATE THAT THERE WERE OTHER EMPLOYEES DESIRING TO OPT IN

To obtain a conditional certification, a Plaintiff shall demonstrate that there are other employees, besides the named plaintiffs, desire to opt-in to a putative class as is

required before certification and prior to notice being authorized by the Court. *Sandate v. Makotek, LLC,* 2006 WL 4792782, at * 3 (M.D. Fla. Sep. 28, 2006) (citation omitted).

"Evidence of other employees who desire to opt in may be based on affidavits, consents to join the lawsuit, or expert evidence on the existence of other similarly situated employees." *Id.* (citation omitted). However, "(a) plaintiff's or counsel's belief in the existence of other employees who desire to opt in and 'unsupported expectations that additional plaintiffs will subsequently come forward are insufficient to justify' certification of a collective action and notice to a potential class." *Id.* (citations omitted).

Moreover, "(c)ertification of a collective action and notice to a potential class is not appropriate to determine whether there are others who desire to join the lawsuit." *Id.* (citations omitted).

Here, the Plaintiff has failed to make any allegation that there is other similarly situated non-exempt employees who desire to opt in.

## VII.    NO EQUITABLE TOLLING SHOULD BE GRANTED

There is no prejudice to actual or potential opt-in plaintiffs that can arise from this case. The Plaintiff's Complaints are utterly devoid of any modest factual showing that there were similarly situated victims, that there was a common practice or policy in violation of law. Plaintiff has failed to make any allegation that there is other similarly situated non-exempt employees who desire to opt in. Plaintiff cannot fairly represent the proposed putative class. The Plaintiff worked for short periods from June 1, 2022, to February 23, 2023, yet the Plaintiff seek to represent "All former or current non-exempt employees from December 8, 2016, to present (six years prior to the filling of the complaint)" for conditional certification. Apparently, he has no commonality or nexus with

those non-exempt employees from December 8, 2016. If the Court grants conditional certification, the collective class should be limited to from June 1, 2022, to the commencement of this action.

So, Plaintiff is not entitled to any equitable tolling.

## <u>CONCLUSION</u>

Based upon the forgoing, it is respectfully requested to the Plaintiffs' instant Motion for Conditional Collective Certification be denied in its entirety.

Dated: Queens, New York
      June 5, 2024                      Respectfully submitted,

                                      */s/ William X. Zou*
                                   _____

                                   By: William X. Zou, Esq.
                                   Bill Zou & Associates PLLC
                                   Attorney for the Defendants
                                   136-20 38th Avenue, Suite 10D
                                   Flushing, New York 11354
                                   (718) 661-9562